█ GEORGE F. JONES, as Administrator of the Estate of GEORGE R. JONES, Deceased, et al., Respondents, v. RADIO CITY MUSIC HALL CORP. et al., Defendants, and DAVIS PIPING CORP., Appellant.— Judgment, Supreme Court, Bronx County, entered on May 27, 1969, after a jury trial, in a personal injury action, so far as appealed from by the defendant-appellant, reversed, on the law, without costs and without disbursements, and the complaint dismissed as to defendant-appellant. The defendant-appellant had been engaged to install water piping in a cooling tower. The piping was required to be watertight. It was not constructed to bear the weight of employees of the defendant-appellant or other contractors or subcontractors. Plaintiff, an employee of A. G. Frichey Corp., fell within the cooling tower from a height of approximately 18 feet into a metal collection pan. Implicit in the verdict is that the fall was caused by the separation of 2-inch branch piping about 3 feet long installed by the defendant-appellant which had been partially threaded and secured to the 6-inch water supply line. Plaintiff's employer was engaged to install the iron work. Plaintiff, together with his foreman, returned after Frichey's work had been substantially completed for the purpose of making some minor adjustments. In the circumstances, it was the duty and obligation of plaintiff's employer to furnish a safe place to work. There was no such duty on the part of the defendant-appellant. The work performed by the defendant-appellant was not intended to be used as a scaffold or to bear the weight of workers either temporarily or permanently. Plaintiff, therefore, assumed the risk of the usage of the piping installed by the defendant-appellant for a purpose not intended by either the defendant-appellant or its employer. The defendant-appellant is not chargeable with a usage for a purpose foreign to the nature and purpose of the installation by the defendant-appellant. Not being plaintiff's employer, defendant-appellant was under no duty to furnish plaintiff with a safe place to work. In addition, defendant-appellant did not contract to furnish a safe place to work. (*Masciarelli* v. *Powell*, 30 A D 2d 342, affd. 23 N Y 2d 929; and cases cited therein.) It is the settled law of this State that one who uses an instrumentality for a purpose for which it was not intended does so at his own peril. (*Gasper* v. *Ford Motor Co.*, 13 N Y 2d 104, 111; *Borshowsky* v. *Altman & Co.*, 280 App. Div. 599, affd. 306 N Y 798; *Marshall* v. *City of New York*, 283 App. Div. 918, affd. 308 N. Y. 836; *De Jesus* v. *Chase Nat. Bank*, 18 A D 2d 1052, mot. for lv. to app. den. 13 N Y 2d 594; *Mancino* v. *1051 5th Ave. Corp.*, 20 A D 2d 771, affd. 16 N Y 2d 527; *Italiano* v. *Jeffrey Gardens Apts.*, 3 A D 2d 677, affd. 3 N Y 2d 977; *Collins* v. *Noss*, 258 App. Div. 101, affd. 283 N. Y. 595; *O'Connor* v. *1751 Broadway*, 1 A D 2d 836, affd. 2 N Y

2d 769; *Lefkowitz* v. *Greenwich Sav. Bank,* 266 App. Div. 995, affd. 293 N. Y. 711.) The use of the pipes by other trades with the knowledge of the defendant was a ground for the dissent in *Masciarelli* v. *Powell* (*supra*) rejected by the majority whose holding was affirmed by the Court of Appeals (23 N Y 2d 929). *McGlone* v. *William Angus, Inc.* (248 N. Y. 197) and *Searson* v. *Corbetta Constr. Co.,* (2 N Y 2d 766), cited in the dissent, have no application to the facts of this case. Those cases involved the construction of a scaffold and planking for the use of employees of the installing contractors. The scaffold and planking were intended as a way for the use of workmen. The sole issue in those cases was whether the contractor erecting the planking and scaffold should have anticipated its use by other workmen. In the case at bar, the piping was never intended nor constructed as a means of support or a way for workmen going to and from their work. Hence, the plaintiff's use was not within the scope of the use or purpose of the original installation. In short, this is not a case of the enlargement of an intended use. This is a case of a use foreign to the purpose of the original installation, which was simply to provide water piping for the water cooler and not to bear the weight of workers going to and from their jobs. As was said in *Borshowsky* v. *Altman & Co.* (*supra*) defendant's knowledge that a marquee being cleaned by plaintiff had on prior occasions been used by other window-cleaners to bear their weight did not impose a liability on the defendant, not the plaintiff's employer, to provide a safe place to work by anticipating the use of the marquee therefor, a purpose foreign to its construction. Concur — Markewich, J. P., McNally and Steuer, JJ.; Kupferman and Murphy, JJ., dissent in the following memorandum by Murphy, J.: I disagree and would affirm the judgment appealed from on the ground that the issue of custom and usage in the trade, as bearing on the question of foreseeability of the use to which appellant's pipes would be put, was a question of fact properly left for a jury determination. (*McGlone* v. *William Angus, Inc.,* 248 N. Y. 197; *Searson* v. *Corbetta Constr. Co.,* 2 N Y 2d 766.) *Masciarelli* v. *Powell* (30 A D 2d 342, affd. 23 N Y 2d 929) relied upon by the majority, is distinguishable. In that case plaintiff and his fellow employees were positioning a 50-foot long metal concrete form on a ledge to permit the pouring of a second or final layer of concrete. The guardrail which became disengaged when plaintiff took hold of it was concededly not wrench-tightened; and should not have been finally secured until the final layer of concrete on the ledge of the range had been poured and hardened. Accordingly, since such was the custom and practice in the construction there involved, it could not be foreseen that an employee of the general contractor would use such unsecured rail to pull himself up from a kneeling position. In the instant case, appellant's work had been completed; and it was concededly negligent in not properly connecting the spray pipe which snapped under plaintiff's weight, causing him to fall some 18 feet to the bottom of the cooling tower. Moreover, evidence was submitted that it was customary for structural steel workers, such as plaintiff, to stand on these pipes after installation. Accordingly, it was permissible for a jury to find that appellant knew of such trade practice and to hold it responsible for plaintiff's injury.