■ MICHAEL HOLTSLANDER, an Infant, by JUDITH HOLTSLANDER, His Parent, et al., Appellants, v C. W. WHALEN AND SONS et al., Respondents. (Action No. 1.) NELSON PASSINO, an Infant, by JUDITH M. JABLONSKI, His Parent, et al., Appellants, v C. W. WHALEN AND SONS et al., Respondents. (Action No. 2.)—Kane, J. P. Appeals from two judgments of the Supreme Court in favor of defendants, entered April 14, 1986 in Schenectady County, upon a dismissal of the complaints by the court at Trial Term (Dier, J.), at the close of plaintiffs' case.

Defendant C. W. Whalen & Sons (Whalen) erected a tent on the property of defendant Church of the Immaculate Conception (the church) on September 14, 1982, for use during a bazaar, which ran from September 16 through 18. The tent was located in the church parking lot and housed casino games. Although other equipment was removed at the close of the bazaar, the tent was not dismantled. On the evening of September 24, 1982, plaintiffs Michael Holtslander and Nelson Passino, then aged 17 and 14, respectively, climbed to the top of the tent and proceeded to slide down. Holtslander and Passino reached the top of the tent by jumping from a cinder block to a limb of a tree which was located near the tent. They then hung from a higher limb until they were over the tent and dropped from there to the tent. While Passino and Holtslander were on the tent, it ripped, and they fell through to the ground and sustained injuries. Plaintiffs then commenced the instant negligence actions against the church and Whalen which were joined for trial.

Evidence submitted at trial established that neighborhood children regularly used the church parking lot as a playground and that members of the church youth group, including Holtslander and Passino, frequented the rectory and parking lot during evening hours. Father Joseph Catugno, pastor of the church, testified that at some point during the week preceding the bazaar, he had been informed that children were playing around and on the tent and that he had warned Holtslander, Passino and others, two days prior to the accident, to stay away from the tent. Catugno also stated that he had asked his administrative assistant to call Whalen and have the tent removed, but he did not know if she had in fact done so.

At the close of plaintiffs' case, on defendants' motion, the trial court dismissed plaintiffs' complaints for failure of proof of liability on the grounds that the tent was not an inherently dangerous instrumentality and was not being used by Holtslander and Passino for the purpose for which it was intended. These appeals by plaintiffs ensued.

We affirm. Regarding the church's alleged liability, we find that the injuries to plaintiffs were unforeseeable as a matter of law. Quite simply, it was not foreseeable that these teenagers would climb up and fall through the roof of the tent located on church property, even given the knowledge that teen-agers had been seen around the tent and children were known to occasionally play in the church parking lot (see, Basso v Miller, 40 NY2d 233, 241; cf. Rosenberg v Mermelstein, 116 AD2d 712, 713, lv denied 67 NY2d 608).

Plaintiffs would impose liability on the church because it did not post security guards around the tent to keep children away and did not remove a cinder block from next to a tree, even though the church pastor had no knowledge that the cinder block was there. The circumstances of this case simply do not necessitate such a burdensome undertaking by the church (see, Basso v Miller, supra). Finally, although a tent, like a pizza, may be many things, it is not in this case a dangerous instrumentality (see, Keohan v Di Paola, 97 AD2d 596, 597; see also, Rosenberg v Mermelstein, supra; Pietrzak v McGrath, 85 AD2d 720, 722; 5B Warren, Negligence in the New York Courts, Dangerous Instrumentality § 4, at 537-541 [3d ed]).

As for Whalen, we reach a similar conclusion. Whalen merely owned the tent and set it up at the church's direction. Indeed, plaintiffs did not submit any evidence to establish that

Whalen had notice that children were playing on or around the tent. Accordingly, the trial court was correct in dismissing this case at the close of plaintiffs' proof and we affirm.

Judgments affirmed, without costs. Kane, J. P., Weiss and Harvey, JJ., concur.

Main and Levine, JJ., concur in part and dissent in part in a memorandum by Levine, J. Levine, J. (concurring in part and dissenting in part). We respectfully dissent as to so much of the majority's decision that sustains the trial court's dismissal of the complaints against defendant Church of the Immaculate Conception (the church). The evidence established that the church property on which the accident took place was located in an urban area and that its grounds, including the parking lot where the tent was erected, were unfenced and regularly used by neighborhood children as a play area. A youth group, in which plaintiffs Michael Holtslander and Nelson Passino participated, met regularly at the church and members of the group were free to enter the church buildings during the evening. As the majority notes, the pastor of the church knew the children were playing around the tent during the week that it remained up after the bazaar ended.

In our view, the foregoing facts could support a finding of negligence on the part of the church. Although, as to the public at large, a canvas tent of a considerable size and height to house casino games during the bazaar was not inherently dangerous, case law has long recognized that, at least once it is known that children commonly play around such an artificial structure, their "well-known propensities * * * to climb about and play" *(Collentine v City of New York,* 279 NY 119, 125) create a duty of care on the part of a landowner to prevent foreseeable risks of harm that might arise out of those activities *(see, Barker v Parnossa, Inc.,* 39 NY2d 926, 929-930 [Breitel, Ch. J., concurring]; *Bowers v City Bank Farmers Trust Co.,* 282 NY 442, 446; *Watson v Niagara Mohawk Power Corp.,* 66 AD2d 996; *Naughton v Sheehan,* 56 AD2d 839; *Garlock v Penn Cent. Transp. Co.,* 53 AD2d 1006; *see also,* Prosser and Keeton, Torts § 59, at 408-410 [5th ed]; Restatement [Second] of Torts § 339 comments b, d).

Given the uncontradicted proof of the church's long acquiescence in, if not encouragement of, the use of its parking lot as a children's play area and actual knowledge of their activities around the tent well before the accident occurred, we believe a jury could readily find it foreseeable that youngsters would climb upon the tent and be injured in a variety of ways, e.g., by slipping off the elevated portion of the tent, the collapse of

the tent while they were on it or under it, or, as actually occurred, by falling when the tent tore open near the top under their weight. If the risk of harm to the children from the artificial condition was foreseeable, the particular precipitating event leading to the injury is immaterial *(see, Barker v Parnossa, Inc., supra,* p 931). It was also a jury question whether the pastor's simple warning to the children to stay away from the tent was sufficient to discharge the church's duty of care. We note in this regard that the tent had been taken down by someone before defendant C. W. Whalen and Sons arrived the day after the accident to remove it. For these reasons, we would reverse the dismissal of plaintiffs' actions against the church and remit to Supreme Court for a new trial.