ROBERT CRUZ et al., Appellants, v NEW YORK CITY TRANSIT AUTHORITY, Respondent.

Second Department, March 21, 1988

APPEARANCES OF COUNSEL

*Hoberman & Sussman, P. C. (Owen O. Hoberman* and *Samuel J. Sussman* of counsel), for appellants.

*William E. Rosa (Lawrence Heisler* of counsel), for respondent.

## OPINION OF THE COURT

BRACKEN, J.

In this personal injury action, the trial court determined, at the close of the plaintiffs' case, that the defendant was entitled to a judgment against the plaintiff as a matter of law (CPLR 4401). We reverse, and grant a new trial.

I

The pertinent trial evidence may be briefly summarized. While waiting for a friend to join him on the landing of an exterior stairway leading to the token booth and turnstile area of the Elderts Lane elevated station of the Jamaica Avenue subway line, the plaintiff Robert Cruz lifted himself up and sat on the landing's 43-inch-high railing. As Cruz sat, a number of young people began to climb the stairway. One of these youths "brushed" against Cruz, who fell to the sidewalk below. His resultant injuries have rendered him quadriplegic.

In addition, the plaintiffs adduced expert testimony from an engineer who was of the opinion that the stairway and railing in question had not been designed in accordance with good and accepted engineering principles. According to the witness, the platform was approximately seven feet above the sidewalk and the railing was an additional 43 inches in height. Thus, the railing should have been designed to preclude persons from sitting upon it, by increasing its height to four feet, or by dimpling it or placing spikes along its length to make it difficult to sit upon or by placing a wire mesh screen above the railing extending to the roof over the stairway. However, the trial court would not permit the witness to testify regarding whether such design features had been implemented either at the elevated subway station in question or at other

elevated subway stations within the city, including those within close proximity to the station in question.

## II

In order to prove a prima facie case of negligence, it is incumbent upon a plaintiff to establish: (1) the existence of a duty on the part of the defendant to the plaintiff, (2) a breach of that duty, and (3) injury suffered by the plaintiff which was proximately caused by the breach (see, Boltax v Joy Day Camp, 67 NY2d 617; Solomon v City of New York, 66 NY2d 1026; Akins v Glens Falls City School Dist., 53 NY2d 325, 333, rearg denied 54 NY2d 831; Iannelli v Powers, 114 AD2d 157, 161, lv denied 68 NY2d 604). In determining whether a plaintiff has proved a prima facie case, we must view the evidence in the light most favorable to the plaintiff and afford him the benefit of all inferences which could reasonably be drawn therefrom (see, Schneider v Kings Highway Hosp. Center, 67 NY2d 743, 745; Negri v Stop & Shop, 65 NY2d 625, 626; Iannelli v Powers, supra, at 160). Examining the evidence in that light, we conclude that the plaintiffs did establish a prima facie case of negligence on the part of the defendant and that the trial court therefore erred when it granted the defendant's motion for judgment following the presentation of the plaintiffs' case. In so holding, we express no view regarding the ultimate determination as to liability.

It is settled that a common carrier is required to exercise reasonable or ordinary care, in view of the dangers to be apprehended, in providing and maintaining safe and adequate stairways in its stations (see, Lewis v Metropolitan Transp. Auth., 99 AD2d 246, 248, affd 64 NY2d 670; Serlin v City of New York, 266 App Div 668, affd 291 NY 595; 17 NY Jur 2d, Carriers, §§ 414, 420). In this case, the testimony of the engineer, viewed most favorably to the plaintiffs, was sufficient to establish a prima facie case that the defendant's failure to have designed the railing in such a manner as to preclude persons from sitting upon it constituted a breach of that duty. Moreover, because the alleged defect was one created by the defendant, actual notice of the defect was established for purposes of a prima facie case (see, Lewis v Metropolitan Transp. Auth., supra, at 249).

Although it is argued that the infant plaintiff's fall was caused by his own negligence in sitting upon the railing, or by his contact with an unknown third person, thereby relieving

the defendant of liability, the evidence, viewed most favorably to the plaintiffs, simply does not establish that the infant plaintiff's conduct or his contact with a third person was so extraordinary and unforeseeable as to constitute, as a matter of law, an intervening cause *(see, Martinez v Lazaroff,* 48 NY2d 819; *Ventricelli v Kinney Sys. Rent A Car,* 45 NY2d 950, *mot to amend remittitur granted* 46 NY2d 770; *cf., Boltax v Joy Day Camp, supra; Marcroft v Carvel Corp.,* 120 AD2d 651, *lv denied* 68 NY2d 609). For the purpose of establishing a prima facie case of negligence, a plaintiff must demonstrate that the negligence of the defendant "was a substantial cause of the events which produced the injury", and, where there is an intervening act which also contributes to the injury, "liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence" *(Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 315, *rearg denied* 52 NY2d 784, 829). The evidence in this case, viewed most favorably to the plaintiffs, was sufficient to establish prima facie that the incident was a foreseeable consequence of the defendant's failure to have provided a safe and adequate stairway.

■ Moreover, the trial court erred in precluding the plaintiffs from adducing testimony from their expert pertaining to the design and construction of exterior stairways at other elevated subway stations in the city, including those in close proximity to the scene of the accident. Proof of a generally accepted practice, custom or usage within a particular trade or industry is admissible as tending to establish a standard of care, and proof of a departure from that general custom or usage may constitute evidence of negligence *(see, Trimarco v Klein,* 56 NY2d 98, 105-107; *Bailey v Baker's Air Force Gas Corp.,* 50 AD2d 129, 132, *lv denied* 39 NY2d 708; Richardson, Evidence § 187 [Prince 10th ed]; 2 Bender, New York Evidence § 71.04; Fisch, New York Evidence § 203 [2d ed]). Of course, it need not be shown that the particular custom or usage is universally observed, so long as it is fairly well defined within the particular field *(Trimarco v Klein, supra,* at 106). There must exist, however, an identity of conditions, so that the particular custom or usage is applicable to the circumstances of the case at hand (2 Bender, New York Evidence § 71.04; Fisch, New York Evidence § 203 [2d ed]). Thus, the plaintiffs in this case should have been afforded the opportunity to establish that there existed an accepted practice with respect to the railing design both at the elevated station in question

and on similar exterior stairways at other elevated subway stations in the city, and the trial court was unduly restrictive in precluding such testimony.

## III

Our dissenting colleague cites several cases in support of the concept that a party has no duty to prevent the misuse of an instrumentality under its control. We gather that this rule would apply, under such interpretation, even though the occurrence of such a misuse might be proved to be eminently foreseeable, and even though the cost of taking reasonable steps to avoid such misuse might be vastly outweighed by the magnitude of the risks posed to society by the failure to take such preventative measures. We have reviewed the cases cited, and are unable to derive from them such a broad rule of law.

Most typical of the cases relied upon in the dissent are those in which an infant plaintiff suffered an injury as the result of having fallen from some area in which the infant should not have been (see, *McCann v City of New York,* 270 App Div 1040, *affd* 296 NY 886 [infant fell from a ledge on outside of a pedestrian bridge]; *Roffenbender v City of New York,* 24 AD2d 581, *affd* 17 NY2d 754 [infant plaintiff fell from a 22-inch-high concrete base upon which an iron fence had been mounted]).

It would be erroneous to derive from these cases an all-encompassing rule that the duty of a landowner to maintain a reasonably safe premises extends only to those who use the appurtenances located on the premises solely for their normal and intended purpose. Such a rule would be directly contrary to those determinations in which infant plaintiffs have been allowed to recover, notwithstanding their misuse of some instrumentality located upon the premises and, more fundamentally, notwithstanding it being on a part of a premises where they had no right to be. In *Patterson v Proctor Paint & Varnish Co.* (21 NY2d 447), for example, an infant plaintiff lit a fire on the defendant's property, and then decided to play "fireman" by pouring on the fire a flammable liquid which he had earlier found in a can. The Court of Appeals held that the defendant was subject to liability. In *Collentine v City of New York* (279 NY 119), the infant plaintiff had climbed onto the roof of a building in a park which had been closed to the public, and fell off the roof when he tripped over an iron bar.

Again, it was determined that the defendant landowner could be subject to liability *(see also, Levine v City of New York,* 309 NY 88 [defendant could be liable where infant plaintiff was playing "follow the leader" and while climbing on top of a railing fell and was injured]).

It has been historically recognized that liability could be found by the jury even in those instances where there has been a misuse of an instrumentality. New York State courts have recognized "the special propensities of children and the prevailing social policy of protecting them from harm" *(Barker v Parnossa, Inc.,* 39 NY2d 926, 929 [Breitel, Ch. J., concurring]) and have not deprived them of a right to compensation for injuries caused by the negligence of third parties solely on account of their status as trespassers *(see, e.g., Martinez v Kaufman-Kane Realty Co.,* 34 NY2d 819, 821) or solely on account of their misuse of an instrument found on the defendant's premises *(see, e.g., Lathem v Double E,* 53 AD2d 921 [recovery permitted where infant plaintiffs decided to take the "fun way" upstairs in the defendant's premises, and attempted to use a conveyor belt to do so]; *see also, Zapata v City of New York,* 96 AD2d 779; *King v Rotterdam Shopping Center,* 21 AD2d 387).

This principle is further illustrated in the recent case of *Holtslander v Whalen & Sons* (70 NY2d 962, *modfg* 126 AD2d 917, on concurring in part and dissenting in part mem of Levine, J., at App Div). In that case, two teen-agers climbed from an overhanging tree limb onto the top of a tent which had been erected on the defendant's property. They suffered personal injuries when the tent ripped, and they fell to the ground. In modifying the order of the Appellate Division, Third Department, which had held that this established that the accident was unforeseeable, and had thus affirmed a trial order of dismissal, the Court of Appeals adopted the concurring in part and dissenting in part memorandum of Justice Levine, holding that the plaintiffs had established a prima facie case. We can see no valid distinction between the facts of the *Holtslander* case and those of this case which would warrant a holding that the plaintiffs have failed to prove a prima facie case.

Even with respect to adults, there is no broad rule of law that a plaintiff who is injured while misusing an instrumentality is precluded from recovery because the defendant who controlled the instrumentality owed no duty to prevent its misuse. Instead, the focus is on the foreseeability of how a

particular item may be used. In *Farkas v Cedarhurst Natural Food Shoppe* (41 NY2d 1041), for example, the court held that the defendant was entitled to summary judgment because the use which the plaintiff made of a display cabinet located on the defendant's property was not " 'reasonably to be perceived' " *(Farkas v Cedarhurst Natural Food Shoppe, supra,* at 1042, quoting from *Basso v Miller,* 40 NY2d 233, 241; *cf., Hall v Scheidelman, Inc.,* 65 AD2d 928 [holding jury could find defendant landowner liable for failure to prevent passengers from using lift intended for goods]). The sufficiency of the precautions taken by a landowner to prevent injuries is almost always a question of fact for the jury *(see, Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507, 520, n 8; *Arena v Ostrin,* 134 AD2d 306).

The decisions in the *McCann v City of New York* (270 App Div 1040, *supra)* and *Roffenbender v City of New York* (24 AD2d 581, *affd* 17 NY2d 754, *supra)* cases, rather than establishing the sweeping rule of law relied upon by our dissenting colleague, seem merely to hold that dismissal of a complaint is warranted where an infant plaintiff fails to prove that his fall was caused by some dangerous condition existing on the defendant's property. In neither *McCann* nor *Roffenbender* did it appear that some defect actually existed on the defendant's property. While there is no proof that the railing in the present case was defective in the sense that it was rusted or broken, there is proof in the form of expert testimony that the very design of the railing was not in accordance with prevailing safety standards. Thus, the jury could have concluded that the railing in question was inherently defective in that its design was such as to allow the occurrence of an accident which could easily have been prevented. Such expert testimony was altogether lacking in *McCann (supra).* In *Roffenbender (supra),* although the plaintiff did present expert testimony, the expert was unable to cite any authority for his assertion that the fence in question was improperly constructed *(Roffenbender v City of New York, supra,* at 755-756).

The other cases cited in the dissent likewise do not support the proposition that a landowner owes no duty of care to invitees on his property who misuse some instrument or structure located on the property.

## IV

In conclusion, we find that none of the cases relied upon by

our dissenting colleague hold, as a matter of law, that a landowner has no duty to prevent injuries which might result from the foreseeable misuse of instruments or structures located on his property. Such a rule would be particularly inappropriate in instances where the instrument or structure is that of a common carrier with the concomitant responsibility a common carrier has to take into consideration the safety of its passengers.

The trial court therefore erred in dismissing the complaint, and a new trial is necessary.

SPATT, J. (dissenting). I respectfully dissent and vote to affirm the judgment on the ground that, under the facts of this case there was, as a matter of law, no breach of any duty on the part of the defendant to protect against the type of accident that occurred here.

In this tragic mishap, the plaintiff Robert Cruz sat upon a stairway railing at a landing leading to the elevated train tracks at the Elderts Lane station in Jamaica, New York, when a youth, who was ascending the stairway, brushed against him causing him to fall to the sidewalk below. It was conceded by the plaintiffs' expert that this stairway railing did not violate any statutory or code provision. In fact, the railing exceeded the minimum height requirement set forth in the New York City Building Code. Further, there was no claim that this railing was defective or out of repair or dangerous to anyone who used the stairway in the manner intended. There was no evidence introduced as to any prior similar accidents at this or any other similar stairway. Further, there was no evidence of actual or constructive notice to the defendant New York City Transit Authority (hereinafter the TA) that persons previously sat upon or fell from the railing. In essence, in this suit, the plaintiffs sought to charge the TA with responsibility to prevent a misuse of the railing.

The plaintiffs' case is based upon the testimony of their engineer Francis J. Cashin, who testified that the stairway and platform were not built in accordance with accepted engineering principles solely because their construction and maintenance did not prevent someone from sitting on the railing. Mr. Cashin's testimony was as follows:

"Q Could you tell us your opinion as to whether or not this stairway and the platform where this accident occurred was [sic] built in accordance with good accepted engineering principles * * *

"A I don't believe it was * * *

"A Right. In the design of a stairway, nature of this design, it should be reviewed for its use, and it should be—and there are standards in the * * *

"A (Continuing) There are standards in the industry where the design of horizontal railings, where—

"THE COURT: We are talking about an elevated structure of this type, a railroad of this type, sir * * *

"A (Continuing) *The design should be such as to preclude perching on it* * * *

"THE COURT: Mr. Cashin, you examined this staircase; you have examined the railing, the bannister, everything with it; to your knowledge, did it violate any statutory code?

"THE WITNESS: (No response).

"THE COURT: Did it violate any statutory code?

"THE WITNESS: None that I know of. None that I know of.

"Q Mr. Cashin, could you tell us what good design practice and construction practice would call for as far as the construction and design of this stairway * * *

"A *Good practice dictates that you preclude a situation where people can readily perch on something*" (emphasis supplied).

According to Mr. Cashin, to prevent such misuse, the TA should have (1) either raised the height of the railing; (2) placed spikes on the railing; or (3) placed a screen or fence above the railing. On cross-examination, the plaintiffs' expert conceded that the railing actually exceeded the height requirement set forth in the New York City Building Code.

During the trial, the plaintiffs attempted to adduce testimony through their expert that other stairways on that same subway line had fencing from railing to ceiling in support of a "foreseeability" theory, to prove that the stairway at issue was not constructed or maintained in accordance with accepted standards and to prove that custom and usage required such fencing. The trial court excluded this testimony.

At the close of the plaintiffs' case, the trial court dismissed the complaint on the ground that the infant plaintiff's own negligence in sitting on the rail was the sole proximate cause of the accident and that the TA breached no duty to the plaintiffs under these circumstances.

In order to establish a prima facie case of negligence, the plaintiffs must first demonstrate the existence of a duty owed

by the TA to the plaintiffs *(see, Solomon v City of New York,* 66 NY2d 1026, 1027; *Akins v Glens Falls City School Dist.,* 53 NY2d 325, 333, *rearg denied* 54 NY2d 831; Prosser and Keeton, Torts § 30 [5th ed]). With regard to the maintenance of a stairway on its property, a common carrier is held to the duty to "exercise ordinary care, in view of the dangers attending its use, to make it reasonably adequate for the purpose to which it [is] devoted" *(Lafflin v Buffalo & Southwestern R. R. Co.,* 106 NY 136, 139; *see also, Kelly v Manhattan Ry. Co.,* 112 NY 443; *Lewis v Metropolitan Transp. Auth.,* 99 AD2d 246, *affd* 64 NY2d 670; *Boettcher v Dowling,* 243 App Div 397, *affd* 270 NY 557; 17 NY Jur 2d, Carriers, §§ 414, 417).

The existence of such a duty presents a question of law for the courts, based upon the following considerations: "As noted earlier, the imposition of duty presents a question of law for the courts * * * resting on policy considerations of whether plaintiff's interests are entitled to legal protection against defendant's conduct" *(Eiseman v State of New York,* 70 NY2d 175, 189-190).

Further, while "foreseeability" defines duty, it does not create it. As stated in *Pulka v Edelman* (40 NY2d 781, *rearg denied* 41 NY2d 901), the concepts of "duty" and "foreseeability" are explained as follows:

"Foreseeability should not be confused with duty. The principle expressed in *Palsgraf v Long Is. R. R. Co.* (248 NY 339) * * * is applicable to determine the scope of duty—*only after it has been determined that there is a duty* * * *

"While a court might impose a legal duty where none existed before * * * such an imposition must be exercised with extreme care, for legal duty imposes legal liability. When a duty exists, nonliability in a particular case may be justified on the basis that an injury is not foreseeable. In such a case, it can thus be said that foreseeability is a limitation on duty. In *the instant matter, however, we are concerned with whether foreseeability should be employed as the sole means to create duty where none existed before"* *(Pulka v Edelman, supra,* at 785-786 [emphasis added]).

Writing for a unanimous court, Judge Kaye further defined the concepts of duty and foreseeability in *Eiseman v State of New York (supra),* as follows: "Embedded in the law of this State is the proposition that a duty of reasonable care owed by the tort-feasor to the plaintiff is elemental to any recovery in negligence *(see, e.g., Pulka v Edelman,* 40 NY2d 781, 782;

*Palsgraf v Long Is. R. R. Co.,* 248 NY 339, 344). Foreseeability of injury does not determine the existence of duty *(Strauss v Belle Realty Co.,* 65 NY2d 399, 402). Unlike foreseeability and causation, both generally factual issues to be resolved on a case-by-case basis by the fact finder, the duty owed by one member of society to another is a legal issue for the courts *(De Angelis v Lutheran Med. Center,* 58 NY2d 1053, 1055). 'While moral and logical judgments are significant components of the analysis, we are also bound to consider the larger social consequences of our decisions and to tailor our notion of duty so that "the legal consequences of wrongs [are limited] to a controllable degree" ' *(Waters v New York City Hous. Auth.,* 69 NY2d 225, 229, quoting from *Tobin v Grossman,* 24 NY2d 609, 619; *see also, Fazzolari v Portland School Dist. No. 1J,* 303 Ore 1, 734 P2d 1326 [Linde, J.])" *(Eiseman v State of New York, supra,* at 187).

Again, recently, in *D'Amico v Christie* (71 NY2d 76), Judge Kaye reiterated the rule delineating duty and foreseeability, as follows:

"in order for plaintiffs to prevail on this claim of common-law negligence, there must first be a legal duty owed by defendant to them. Foreseeability of harm is alone not enough *(Waters v New York City Hous. Auth.,* 69 NY2d 225, *supra; Pulka v Edelman,* 40 NY2d 781, 785, *rearg denied* 41 NY2d 901). No prior cases of this State have recognized the duty plaintiffs now espouse * * *

"Thus, plaintiffs have failed to demonstrate any legal duty in the existing law of this State that defendant can be said to have breached" *(D'Amico v Christie, supra,* at 87-89).

In this case, in the absence of notice of persons sitting on the railing or of prior similar occurrences, there was, in my view, no duty on the part of the TA to prevent such a misuse of the stairway by persons perching on the railing or to further safeguard the area above the landing railing. In cases dealing with a "misuse" of an instrumentality, the courts have generally found no duty to prevent such misuse in the absence of notice. For example, in *McCann v City of New York* (270 App Div 1040 [2d Dept 1946], *affd* 296 NY 886), the infant plaintiff fell from a ledge on the outer side of a pedestrian bridge in a park in Queens County. In reversing a judgment in favor of the plaintiff and dismissing the complaint, this court held: "No actionable negligence was established by the plaintiff. She suffered injury as a consequence of

going needlessly and recklessly on a portion of the structure at a point where no one had a right to go. The structure itself was free from any defect so far as construction or maintenance was concerned. It was safe for travel by all who used it in a proper and customary manner. Only the highway was held out for such use; no other part was held out for use as a crossing" *(McCann v City of New York, supra,* at 1040).

In *Murray v City of New York* (276 App Div 765), the plaintiff tripped over a stone fence foundation which extended 4½ inches onto the sidewalk. A judgment in favor of the plaintiff pedestrian was reversed and the complaint was dismissed, as follows: "The evidence adduced discloses that the projection complained of consisted of a stone, octagonal in shape, and four inches high, which extended four and a half inches from the line of the coping of which it was a part, upon the sidewalk of Ryerson Street. The coping and fence were, apparently, constructed to serve a necessary and convenient purpose, in separating a schoolyard from the public highway, and *the stone was so placed as to offer no obstruction to pedestrians, except those who might choose to walk along the edge of the coping and practically against the fence erected on it. The coping and fence had been maintained for a considerable number of years. There was no evidence that there had been any previous accident, or any complaint as to the condition alleged to have caused the accident, but on the contrary evidence was produced that there had been no such accident, to the knowledge of appellants"* (Murray v City of New York, supra, at 766 [emphasis supplied]).

In *Roffenbender v City of New York* (24 AD2d 581, *affd* 17 NY2d 754), a six-year-old plaintiff walked along a 22-inch-high concrete base bordering the sidewalk in front of the building maintained by the defendant. Mounted on the concrete base was a 34-inch-high iron picket fence. The infant plaintiff fell from the base and his chin caught on one of the pickets. This court, by a 3 to 2 decision, affirmed the dismissal of the complaint at the close of the plaintiffs' case.

In *Cuevas v 73rd & Cent. Park W. Corp.* (26 AD2d 239, *affd* 21 NY2d 745), a child sustained injury as the result of another child's raising and dropping a public sidewalk grating-type cellar door on the infant's hand. The cellar door was not locked, although it had a locking device, because the mechanism was in disrepair. In affirming a dismissal of the complaint at the close of plaintiffs' case, the court held: "On no view of the issue is there any basis for a recovery. It is simply

that one is not obligated to protect users, including children, who may use harmless things to cause themselves harm" *(Cuevas v 73rd & Cent. Park W. Corp., supra,* at 242; *see also, Barnaby v Rice,* 75 AD2d 179, *affd* 53 NY2d 720; *Jones v Radio City Music Hall Corp.,* 38 AD2d 909, *affd* 31 NY2d 790; *Roberts v Town of Colchester,* 134 Misc 2d 109; *cf., King v Rotterdam Shopping Center,* 21 AD2d 387; *Meyer v State of New York,* 92 Misc 2d 996).

In other jurisdictions, the courts have arrived at similar results with regard to misuse of instrumentalities. In *McNairy v Kup Realty Co.* (59 Ill App 2d 463, 208 NE2d 88), a 21-month-old child was fatally injured in a fall from an outside rear stairway landing on the second floor when he fell through an opening in the porch landing. The negligence asserted was that the single diagonal railing failed to properly and safely enclose the stairway area. In affirming a directed verdict in favor of the defendant landlord, the court used the following, particularly pertinent language: "The purpose of railings on outside stairways and landings is a 'guard or protection' to those lawfully using the stairways and landings. They are intended to be used for the support and safety of such persons climbing the stairs and using the landings in a normal, reasonable, and usual manner (Rosseu v. Goodridge, 185 Ill App 164 (1914); Palmer v. Byrd, 131 Ill App 495 (1907).) *Such railings and bannisters, however, are not intended to completely enclose stairways and landings with an impenetrable barrier"* (*McNairy v Kup Realty Co., supra,* at 468-469, at 91 [emphasis added]; *see also, Brown v Scranton,* 313 Pa 230, 169 A 435 [misuse of a wire fence]).

Thus, the weight of authority in this area of the law unequivocally points to affirmance of the trial court's dismissal of the complaint based on a lack of any actionable duty to prevent misuse of the stairway railing in the absence of notice of prior similar occurrences and in the absence of any evidence that the railing was in a state of disrepair. The cases relied on by the majority involve either actual or constructive prior notice to the defendant of the misuse which led to the injury *(Barker v Parnossa, Inc.,* 39 NY2d 926; *Patterson v Proctor Paint & Varnish Co.,* 21 NY2d 447 [actual notice]; *Collentine v City of New York,* 279 NY 119 [constructive notice]), or a known or long-term defective and dangerous condition *(Zapata v City of New York,* 96 AD2d 779 [actual knowledge of hole in fence of public park bordering railroad yard]; *Levine v City of New York,* 309 NY 88 [railing in an

area where children were invited to play broken for six years]), or no misuse at all *(Martinez v Kaufman-Kane Realty Co.,* 34 NY2d 819 [no misuse]; *Hall v Scheidelman, Inc.,* 65 AD2d 928 [inadvertent misuse due to failure to warn]), or a failure to supervise *(Lathem v Double E.,* 53 AD2d 921). These cases are, therefore, distinguishable from the instant case and, in my view, do not support a reversal.

I also disagree with the view of the majority that the Court of Appeals recent decision in *Holtslander v Whalen & Sons* (70 NY2d 962, *modfg* 126 AD2d 917) supports a reversal in this case. Indeed, the holding in *Holtslander* may be viewed as reinforcing the requirement of notice as a basic prerequisite to the establishment of a prima facie case when dealing with the misuse of an instrumentality. The defendant church in *Holtslander* had actual notice not only that children played around the tent but that children were misusing the tent by climbing on it. The facts related in the majority decision of the Appellate Division, Third Department, reveal that the pastor of the church where the accident occurred "testified that at some point during the week preceding the bazaar, he had been informed that children were playing around and *on the tent" (Holtslander v Whalen & Sons, supra,* at 918 [emphasis added]). Moreover, Justice Levine, in his concurring in part and dissenting in part memorandum which was adopted by the Court of Appeals, relied upon "the uncontradicted proof of the church's long acquiescence in, if not encouragement of, the use of its parking lot as a children's play area and actual knowledge of their activities around the tent well before the accident occurred" *(Holtslander v Whalen & Sons, supra,* at 919). Thus, *Holtslander,* involving the unusual occurrence of a tent in a parking lot, with actual notice that children were misusing the tent by climbing on it, cannot be read to establish a prima facie case against the TA for misuse of an otherwise safe, ordinary stairway, absent notice of misuse.

The plaintiffs' burden in this case is made even more difficult in light of the fact that a precipitating factor in causing the infant plaintiff's fall was the intervening act of a third person. The evidence, namely, that another person ascending the station stairway brushed against the infant plaintiff sitting on the railing, propelling him over onto the sidewalk, even when viewed in the light most favorable to the plaintiffs, does not present "a normal or foreseeable consequence of the situation created by the defendant's negligence", as a matter of law *(Derdiarian v Felix Contr. Corp.,* 51 NY2d

308, 315, *rearg denied* 52 NY2d 784; *see also, Boltax v Joy Day Camp,* 67 NY2d 617; *Marcroft v Carvel Corp.,* 120 AD2d 651, *lv denied* 68 NY2d 609; *Mack v Altmans Stage Light. Co.,* 98 AD2d 468).

Finally, there is merit to the plaintiffs' contention that the trial court erroneously precluded testimony from their expert that other subway stairways in the area had been equipped with the screening recommended by the plaintiffs' expert for this stairway. However, while such testimony may have been admissible on the issue of foreseeability, it would not have created an actionable duty on the part of the TA. The voluntary undertaking by the TA to fence in other stairways would not impose on the carrier a greater or additional standard of care to install such fences on all its stairways. The duty of the TA was to exercise reasonable care in the maintenance of the stairway, and not a greater standard of care. Stated otherwise, the self-imposed act of the TA in installing fences on some stairways could not establish a duty to do so on all such stairways if the standard of reasonable care did not require such action. As was stated by this court in *Newsome v Cservak* (130 AD2d 637, 638), the rule is as follows: "there is no basis for the proposition that a party may be held liable for failing to follow a policy which it has adopted voluntarily, and without legal obligation, especially when there is no showing of detrimental reliance by the plaintiffs on the defendants following that policy *(cf.,* Prosser and Keeton, Torts § 56, at 380-381)."

In *Guercio v New York Lerner Co.* (63 NYS2d 664, *affd* 273 App Div 782, *lv denied* 273 App Div 816), it was held: "The mere fact that defendant voluntarily and gratuitously undertook additional precautionary measures, such as the use of the 'Griptex', is not proof that the condition was dangerous, and is insufficient to create liability where none existed" *(Guercio v New York Lerner Co., supra,* 63 NYS2d, at 666).

Since the TA is not bound by a legal standard higher or more demanding than that of reasonable care *(see also, Danbois v New York Cent. R. R. Co.,* 12 NY2d 234, 238 ["It may well be that such a rule should be excluded if, as a matter of law, it transcends the area of reasonable care"]; *Morris v Troy Sav. Bank,* 32 AD2d 237, *affd* 28 NY2d 619; *Caputo v New York City Tr. Auth.,* 86 AD2d 883), assuming, arguendo, that the exclusion of testimony with respect to other subway stairways was erroneous, the exclusion was, in this context, harmless. In the absence of an actionable duty, that evidence would not have made out a prima facie case of negligence. In

this case, in the absence of notice of any misuse of the railing, as a matter of law, there was no duty to further protect the railings from misuse.

The imposition of liability upon the TA because a young man was injured when he fell while seated on an otherwise safe railing by being brushed off by a third party would, in the absence of notice, unreasonably extend the bounds of liability of landowners and carriers and impermissibly increase " 'the burden of avoiding the risk' " *(Basso v Miller,* 40 NY2d 233, 241, quoting from *Smith v Arbaugh's Rest.,* 469 F2d 97, 100, *cert denied* 412 US 939). In *D'Amico v Christie (supra),* a Dram Shop Act case, the Court of Appeals again declined to extend the ambit of common-law tort liability: "Nor, on these facts, should the common law be enlarged to permit plaintiffs' recovery. It is plain that to do so would have broad ramifications, a factor we appropriately take into account in fixing the orbit of duty that will necessarily control other cases as well as this one *(see, Waters v New York City Hous. Auth.,* 69 NY2d 225, 230, *supra; see also,* Morrison and Woods, *An Examination of the Duty Concept: Has It Evolved in Otis Engineering v Clark?,* 36 Baylor L Rev 375, 419-425)" *(D'Amico v Christie,* 71 NY2d 76, 89, *supra).*

I agree with my colleagues in the majority that there should not be imposed a broad sweeping rule precluding liability for misuse of an instrumentality. However, in this case, imposition of a burden on the TA to guard against an occurrence such as this where, without actual or constructive notice of prior misuse, the plaintiff was sitting on a stairway railing and was caused to fall as a result of an unforeseeable act by a third party, would impermissibly extend the bounds of any existing precedents. Such a burden would be unreasonable considering the countless number of railway stations and stairways in New York, the limitless array of possible risks and the infinite number of injuries that could occur by their unknown misuse *(see, Pulka v Edelman,* 40 NY2d 781, 786, *supra).*

Accordingly, the judgment in favor of the TA should be affirmed.

MOLLEN, P. J., and BROWN, J., concur with BRACKEN, J.; SPATT, J., dissents and votes to affirm the judgment appealed from, with an opinion.

Ordered that the judgment is reversed, on the law, and a new trial is granted, with costs to abide the event.