■ ROBERT CRUZ et al., Respondents, v NEW YORK CITY TRANSIT AUTHORITY, Appellant.—In a negligence action to recover damages for personal injuries, etc., the defendant appeals from a judgment of the Supreme Court, Queens County (Durante, J.), entered March 12, 1990, which, upon a jury verdict, is in favor of the plaintiff Robert Cruz in the sum of $2,545,551.91, and in favor of the plaintiff Zayda Rivera in the sum of $115,320.76.

Ordered that the judgment is reversed, on the law, without costs or disbursements, and the complaint is dismissed.

The plaintiff Robert Cruz was injured as a result of a fall from the landing of a stairway leading from a public sidewalk to an elevated train station owned and operated by the defendant New York City Transit Authority (hereinafter the TA). As Cruz was ascending the northeast stairway of the Elderts Lane station of the elevated "J" line above Jamaica Avenue in Queens, he paused on a landing to permit a group of youths running up the stairs behind him to pass. Allegedly to avoid contact with the individuals, who were running to catch a train that was pulling into the station, Cruz hoisted himself atop the horizontal railing running parallel to and enclosing the stairway landing. As he did so the passing youths brushed against Cruz's legs, causing him to lose his

balance. He fell backward, over the railing, to the sidewalk, which was approximately 10 feet 8 inches below. The railing from which Cruz fell was 44 inches above the floor of the landing. As a result of his fall, Cruz was rendered quadriplegic. The jury found him 60% at fault in the happening of the accident and the TA 40% at fault.

Upon the first trial of this action, the court awarded the TA judgment as a matter of law following the close of the plaintiffs' case. On appeal, this Court reversed, holding that certain evidentiary rulings of the trial court had been erroneous and that the plaintiffs had made out a prima facie case of negligence *(see, Cruz v New York City Tr. Auth.,* 136 AD2d 196). We held that the trial court erred in precluding the plaintiffs' expert from testifying regarding whether certain features in the design of railings had been implemented either at the elevated subway station in question, or at other elevated subway stations within the city, including those within close proximity to the station in question. We also concluded that the trial court erred in precluding the plaintiffs from adducing testimony from their expert pertaining to the design and construction of exterior stairways at other elevated subway stations in the city, including those in close proximity to the scene of the accident, and that the plaintiffs should have been allowed to establish that there existed an accepted practice with respect to railing design both at the elevated station in question and on similar exterior stairways at other elevated stations in the city *(Cruz v New York City Tr. Auth., supra,* at 199-200).

In reversing, we were careful to state that we were taking no view regarding the ultimate determination as to liability. Now, with the benefit of the full record of the second trial, at which the plaintiffs were permitted to develop the evidence improperly precluded at the first trial, and at which the TA had the opportunity to present evidence for its side, we conclude that the plaintiffs have not established the necessary elements for a finding of any liability against the TA. Accordingly, we reverse the judgment and dismiss the complaint.

On the full record before us, the plaintiffs attempted to establish that the TA was negligent in the design, construction and maintenance, of the landing and railing from which Robert Cruz fell. The plaintiffs presented testimony from two expert witnesses. At the second trial, James Howie, a licensed architect, acknowledged that the 44-inch-high horizontal landing railing complied with "minimum City Code requirements". He opined, however, that in light of the proximity of this train

station to nearby Franklin K. Lane High School, the stairway in question "[i]deally * * * should have had some sort of protection from the possibility of someone falling over the railing". Mr. Howie postulated that the railing should have been higher, at least 48 inches from the floor of the landing, or that it should have been topped with protruding spikes or finials or constructed in a shape such as a triangle with its apex pointing upwards so as to deter people from sitting on the rail. Alternatively, Mr. Howie opined that the entire stairway should have been fenced in so as to prevent people from falling over the railing. Acknowledging that the northeast stairway from which Cruz fell met and exceeded minimum building code requirements, Mr. Howie nevertheless concluded that taking into consideration the use of the stairway by numerous high school students, the design and maintenance of the stairway "should have been better. It should have included some sort of additional safety features to prevent the type of situation that occurred here".

Other than couching his lesson in hindsight, Mr. Howie offered no basis for his opinion that further protective measures should have been undertaken. Nor did he present credible testimony establishing that further precautions were called for on the basis of engineering practice with respect to such designs. His testimony in this regard was so lacking that while he claimed to have seen raised spikes used on railings to deter people from sitting on them, he could not identify a single railing anywhere that employed such devices in those settings. Further, he admitted that he had never seen a triangular tubular railing in use anywhere.

The witness provided no valid testimony to support the plaintiffs' contention that the TA failed to fulfill its duty to passengers and the public. While attempting to show that this duty required the use of greater precautions than existed he was forced to make a startling admission, notably, that he himself, in the two exterior staircases that he designed, and that were in actual use, did not employ higher railings or spikes. Furthermore, although Mr. Howie endorsed the use of cyclone fencing, such as that used on the northwest stairway of the Elderts Lane station, the TA established that this fencing was installed not to prevent passengers from falling from its exterior stairways, but rather to prevent would-be fare evaders from climbing up the exterior of the elevated structure past the part-time token booth at that end of the station.

The plaintiffs also read into the record portions of the

testimony of Francis Joseph Cashin, a structural engineer who had testified at the first trial of this action. Mr. Cashin, too, had been of the opinion that the Elderts Lane station stairway from which Cruz fell should have had a higher surrounding railing or a spiked railing, or should have been entirely fenced in. The TA, however, adduced proof that Mr. Cashin, like Mr. Howie, had not incorporated in his own designs for analogous projects these very safety features that he claimed should have been utilized by the TA. Furthermore, the TA proffered expert testimony to establish that the 44-inch-height of the railing in question was mandated by New York City building code requirements as a matter of fire safety, so that in the event of a fire, ladders could reach the stairways, if necessary, to evacuate passengers. Railings on primary exterior stairs and balconies may not exceed 50% of the height of the total opening. As part of its case, the TA also established that spikes atop such exterior railings would also pose a hazard to the evacuation of passengers via ladders placed against the railings.

On the full record before us, it is clear that the plaintiffs' expert testimony that supported the unrebutted prima facie case on the first trial was so convincingly defeated, overall, as to render it virtually worthless. Notably, there was testimony that three other metropolitan areas in the United States (Boston, Philadelphia, and Chicago) had elevated subway lines and in none of them were there stairways with finials on the guard rails.

In short, there was a failure of proof to establish that this elevated train stairway, erected in or about 1910, was negligently designed or maintained. Further, the plaintiffs failed to establish that any other similar incidents had occurred at that or any other elevated station in the city. The evidence established that the height of the railings complied with pertinent building code provisions. Even assuming that the plaintiffs proved that the TA was on notice that students had periodically used this railing as a perch, they failed to establish that there was any defect in existence, attributable to the TA, that was a proximate cause of Cruz's accident. Although the plaintiffs' witnesses at the second trial were permitted to testify as to alleged negligent design and deviation from accepted engineering practices, we find, on the basis of the entire record, that while the evidence supports a finding that Cruz misused the railing, the evidence on which to fasten liability on the part of the TA was entirely lacking (see, Pierce v New York Cent. R. R. Co., 260 App Div 295, affd 284 NY 754).

Upon our review of the full record, it is clear that in this case a judgment in favor of the defendant is warranted since Cruz failed to prove that his fall was caused by a dangerous condition existing at the Elderts Lane station *(see, Roffenbender v City of New York,* 24 AD2d 581, *affd* 17 NY2d 754). Because there was no valid line of reasoning by which a plaintiffs' verdict could be rationally reached, we dismiss the complaint *(see, Nallen v Helmsley-Spear, Inc.,* 50 NY2d 507, 517). Balletta, J. P., Rosenblatt, Miller and Pizzuto, JJ., concur.