■ WILLIAM URQUHART, Respondent, v NEW YORK CITY TRANSIT AUTHORITY, Appellant. [604 NYS2d 176] —In a negligence action to recover damages for personal injuries, the defendant appeals from a judgment of the Supreme Court, Kings County (Garry, J.), entered June 12, 1992, which, upon a jury verdict finding it 90% at fault and the plaintiff 10% at fault in the happening of the accident, and finding that the plaintiff had suffered damages in the amount of $384,000 ($375,000 for pain and suffering and $9,000 for past out-of-pocket expenses), is in favor of the plaintiff and against it in the principal sum of $345,600.

Ordered that the judgment is reversed, on the law, without costs or disbursements, and the complaint is dismissed.

The Supreme Court denied the defendant's motion to dismiss the complaint on the ground that the plaintiff did not establish a prima facie case. This was error.

"Proof that a conveyance came to a sudden stop without showing that it was unusually violent or that there was more than the usual and ordinary jerk incident thereto is not sufficient to establish negligence in an action by a passenger for injuries sustained" (17 NY Jur 2d, Carriers, § 471, at 543-544; see also, Kokofsky v City of New York, 297 NY 553). Here, we find that the plaintiff failed to establish that the stop was in fact sudden or unusual for a mid-morning bus on Court Street, a street which the plaintiff admitted was filled with pedestrians as well as moving and double-parked automobiles. Therefore, in the absence of other evidence establishing negligence on the part of the operator of the bus, the Supreme Court should have granted the motion to dismiss. Mangano, P. J., Balletta and Rosenblatt, JJ., concur.

Ritter, J., dissents, votes to reverse the judgment appealed from, on the facts, to affirm the liability verdict, and to remit the matter to the Supreme Court, Kings County, for a new trial on the issue of damages only, unless the plaintiff stipulates to reduce the verdict for conscious pain and suffering to $150,000, and to the entry of an amended judgment accordingly, with the following memorandum: Unlike my colleagues, I believe the evidence adduced during the liability phase of the trial, when viewed in the light most favorable to the plaintiff (see, Cruz v New York City Tr. Auth., 136 AD2d 196), is legally sufficient to establish a prima facie case of negligence against the defendant New York City Transit Authority. The jury heard radically different accounts of the events that caused the alleged accident. Properly instructed on how to evaluate the evidence, and the law applicable to the case, the jury resolved the conflict by crediting the plaintiff's version of the facts, and found the defendant 90% at fault for the injuries he sustained. Under the circumstances, I would uphold the liability verdict in this case.

The plaintiff alleges that he fell and sustained serious injuries while riding as a passenger on the defendant's bus. On the date of the incident in question, September 11, 1989, the then 76-year-old plaintiff weighed approximately 330 pounds. At 11:25 A.M., after he had gone to a nearby bank, the plaintiff walked to a bus stop located on Court Street in downtown Brooklyn, between Remsen and Joralemon Streets. He waited about 10 minutes for a number 41 bus.

The plaintiff said that he observed the bus approaching the bus stop at a "pretty fast" rate of speed. He gave the driver a signal and the bus stopped in the middle lane of traffic. The plaintiff stepped off the curb, crossed the outer lane of traffic and entered the bus. After depositing the fare and obtaining a transfer, the plaintiff began walking towards the back of the bus. According to the plaintiff, the bus immediately began moving forward at a very high rate of speed.

The plaintiff testified that the driver was arguing with another passenger as the plaintiff was making his way down the aisle, holding on to the back of the side seats. The bus had proceeded through the intersection at Joralemon Street and reached the middle of the next block as the plaintiff turned to sit in the wide side seat opposite the rear door. However, before he was seated, the driver hit the brakes. The force of the stop caused the plaintiff to fall and slide all the way down to the front of the bus. The plaintiff's words described the event: "Just as I went to turn to sit on the side seat we had crossed Joralemon and, boom, about middle of the block he hit on the brakes. And as I went to turn to the seat, all of a sudden was a boom, and the bus stopped and I went sliding down and I landed right at the bus driver's seat where he is sitting. And my shoulder hit and my knee and I busted my elbow".

During cross-examination, the defense counsel asked the plaintiff whether he had actually fallen near the rear door due to his own physical infirmity, and not because of a short stop. However, the plaintiff insisted that it was the force of the bus stopping suddenly that caused his fall, and that he landed in the front of the bus at the driver's feet. He also adhered to his testimony that the bus had been travelling fast, he estimated 25 to 30 miles per hour, when he heard the boom, and the bus made a sudden stop.

According to the defendant's bus driver, the plaintiff entered the bus at Remsen Street after it had stopped near the curb. He recalled the plaintiff, who he described as "heavy set", and who was using a walking cane. He gave the plaintiff a transfer and proceeded into traffic, but had to stop to let some cars go by. He said he was going less than five miles per hour and the stop was routine. He claimed that he proceeded along Court Street at about 10 miles per hour and arrived at the next stop without incident. He said that he did not have an argument with any of the passengers, did not hear any "boom" sounds, and did not make an abrupt stop. At one point, a different passenger told the driver that the plaintiff

had fallen; the driver looked in the rear view mirror and saw the plaintiff sitting on his buttocks in the aisle, all the way in the back of the bus. The driver stopped the bus, helped the plaintiff up, and called for assistance.

In accordance with PJI 2:165, the court instructed the jury on the applicable law as follows: "A carrier owes the duty to its passengers to carry them in a reasonably careful and prudent manner. It is recognized that the starting, slowing or stopping of a vehicle may not always be accomplished smoothly and on occasion may necessarily involve some jolting. The carrier is not liable for injuries resulting from such operation of the vehicle. A passenger assumes some risk in the movement of the vehicle and must use reasonable care to protect himself [or herself]. A carrier has the duty * * * to avoid causing extraordinary, unusual and violent jerks, lurches or stops. You may find that the carrier was negligent if you find that the movement of the vehicle was sudden, unusual and violent".

The language used in the pattern charge is based on the holding of the Court of Appeals in *Trudell v New York R. T. Corp.* (281 NY 82). In *Trudell,* the plaintiff's decedent was thrown off the platform of a train by a sudden and unusually violent jerk or lurch. The jerk or lurch had occurred about a block after the train had pulled out of a station, and caused the decedent to be thrown violently against a gate, which gave way, and allowed him to fall to his death on the tracks below. At the close of the evidence, the trial court directed a verdict in favor of the defendant. The Appellate Division affirmed but the Court of Appeals reversed and granted a new trial holding, in pertinent part: "Whether the jerk or lurch was unusual and violent or the contrary was sharply contested and raised a question of fact. If out of the ordinary and unusual, the sudden jerk was evidence warranting the imputation of negligence in the operation of the train" *(Trudell v New York R. T. Corp., supra,* at 85; *see also, Beach v Rochester Tr. Corp.,* 301 NY 511).

The plaintiff was required to prove that the movement of the bus here was unusual or violent in order to establish a prima facie case of negligence. Testimony that the vehicle lurched or jerked forward, standing alone, is insufficient, without other evidence to show that the movement was unusually strong or violent *(see, Taylor v Westchester St. Transp. Co.,* 276 App Div 874). The plaintiff in this case did much more than merely characterize the stopping of the bus as sudden and unexpected. He testified that the bus was travel-

ing at a high rate of speed and the force of the bus stopping caused him to slide from near the rear door of the vehicle to the front. As he was sliding to the front of the bus, his body turned and he fell on his left side. The impact of the fall caused him to sustain a serious injury to his knee. The plaintiff's testimony was sufficient to raise a question of fact as to whether the movement of the bus was usual and ordinary, or unexpected and violent. His testimony in this case, standing alone, was sufficient to permit an inference of negligent operation, as there is no requirement that he adduce independent evidence corroborating his account of what occurred. The driver's contradictory testimony simply raised an issue of credibility which was properly submitted to the jury for resolution (see, *Harris v Manhattan & Bronx Surface Tr. Operating Auth.,* 138 AD2d 56).

This is not a case in which the carrier has established that it should be exonerated for a sudden stop because of an emergency not of its own creation and without any negligence on its part contributing thereto (see, 1 NY PJI2d 423, comment, citing, *inter alia, Kokofsky v City of New York,* 297 NY 553). Nor, in my view, was the jury's verdict on the issue of liability against the weight of the evidence. Accordingly, I would uphold it.

However, I find that the award of damages for pain and suffering deviates materially from what would be reasonable compensation, and that a new trial should be granted on that issue alone unless the plaintiff stipulates to a reduction of the verdict as set forth above (see, CPLR 5501 [c]).