OPINION OF THE COURT
Robert A. Harlem, J.
In this personal injury action, the defendant, Town of Colchester, moves for summary judgment.
On July 17, 1983 the plaintiff, Kevin C. Roberts, intention *110 ally dove from a bridge over the Beaverkill River at Cooks Falls, New York, entering the water and striking his head on the river bottom. The bridge is located along a highway maintained by the defendant town. It is claimed that the defendant was negligent in failing to post warning signs alerting people of the dangers of diving or jumping from the bridge; and failing to properly maintain, supervise or control the area of the bridge and in failing to take any precautionary steps to avoid plaintiffs accident. A derivative action is also brought by the wife of Kevin Roberts.
The position of the defendant is that there is no negligence on its part, and, secondly, that the intentional dive was an intervening, superseding cause.
The plaintiff asserts that his dive was a foreseeable event in that the municipality had knowledge that others frequently dove into the river from the bridge and would continue to do so in the absence of measures expressly discouraging such activities. On the date of this misfortune, the plaintiffs were on an outing with their children together with some friends at a site along the north shore of the Beaverkill River. This area had been used by members of the public for swimming during the summer months. This spot was approximately 100 feet upstream from the bridge, this being a structure which was erected in about 1977 to replace an older span which was located about 50 feet downstream from the swimming area.
It appears that in some past years the municipal authorities had provided a lifeguard in the area where people would swim, but there was no such person present on the date of this occurrence. There were no specific measures taken to discourage jumping or diving from the bridge. No signs were posted and no patrols were instituted. It does appear that there was a sign on the old bridge which forbade jumping or diving.
The injured plaintiff grew up in the general vicinity of this occurrence and had gained familiarity with the swimming and bridge areas. He was aware that the water depth was between 6 feet and 8 feet at the swimming area and that the river bed consisted of slate rock. He also knew that over the years several people had been injured when diving from the old bridge, the deck of which was about 25 feet above the river. This diving occurred in spite of the presence of the sign prohibiting such activities. Kevin Roberts had never dived from the old bridge, but he had jumped from a rock ledge located beneath it in about 1969 or 1970.
*111 As far as the new bridge is concerned, this injured plaintiff was not familiar with it or its immediate environs. On the date of this incident, Kevin Roberts observed four young boys, one of whom was about 14 years old, diving from the bridge which was about 25 feet above the river. He saw no adults partaking of this activity. He made no inquiries as to the safety of diving from the bridge, and was not advised that it was safe to do so. The injured plaintiff admittedly dove from the bridge without ascertaining the composition or configuration of the river bed under the bridge or the depth of the water at this point. The dive resulted in the striking of his head on the river bottom in six feet of water.
There are three elements essential to an action for negligence: the existence of a duty running from the defendant to the plaintiff; the failure of the defendant to discharge that duty; and injury to the plaintiff proximately resulting from the breach of that duty (41 NY Jur, Negligence, § 7). Elaborating upon the first element, in Palsgraf v Long Is. R. R. Co. (248 NY 339, 344), it was noted that "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension”.
In regard to premises liability, in Basso v Miller (40 NY2d 233) the Court of Appeals abandoned the multiple standards of care owed by the owners or occupiers of land based upon the status of those found upon the property and adopted a single standard of liability requiring reasonable care under all the circumstances with liability to be measured by foreseeability. The court acknowledged that the likelihood of a plaintiff’s presence had been an implicit consideration in determining status and the duty commensurate therewith and that it would now be a primary independent factor in determining foreseeability, with the duty owed varying with the likelihood of the plaintiff’s presence at the particular time and place of the injury. The court observed that, while status is no longer determinative, considerations of the plaintiff’s identity and the purpose of his presence upon the land are factors that, if known, might be included in arriving at what would be reasonable care under the circumstances. It also noted that the doctrines of comparative negligence and assumption of the risk retained their vitality, to be invoked when appropriate.
It is fundamental that not every lawsuit involving a claim of injury raises a factual question for the jury. Initially, the *112 court must make the threshold determination as to whether there is sufficient evidence to permit an inference of negligence to be drawn (Basso v Miller, supra; Scurti v City of New York, 40 NY2d 433; Quinlan v Cecchini, 41 NY2d 686; Akins v Glens Falls City School Dist., 53 NY2d 325). As was noted in Quinlan v Cecchini (supra, p 689), the court may consider whether the foreseeability of the presence of a person on the property is too remote, given the nature of the risk and the burdens that would be imposed on the owner to guard against it. The court is also concerned with the weighing of the probability of the harm, the gravity of the harm against the burden of precaution, and other considerations in determining whether reasonable persons can differ as to whether the defendant was negligent.
The initial basis for liability is premised upon a failure to warn. In Herman v State of New York (63 NY2d 822) it was said that such liability is only recognized where a property owner has notice of the condition of which a warning should be given as well as the unreasonable risk created by that condition. It should be noted that there is no assertion that this bridge was erected or maintained so as to create a condition unique or distinct from that of any other bridge. It is recognized that structures of this nature are typically put in place to span waterways, highways, railways and ravines. In every circumstance the bridge rises above the contour of its land environs and is by its nature a precipice. There is no claim that this bridge, being designed for highway travel, differed from any structure so as to create or present a risk of danger to anyone who used it properly. (Compare with, McCann v City of New York, 270 App Div 1040, affd 296 NY 886, where liability for a fall from a narrow outer ledge of the bridge was rejected, since the structure was safe for all who used it in a proper and customary manner. This decision concededly predates Basso v Miller, supra, and CPLR 1411, comparative fault.)
It could not be said that a more precise statement of the claim of plaintiffs is a failure to warn concerning the dangers of jumping or diving from the bridge. There is no duty to warn against a condition that can be readily observed by a reasonable use of one’s senses (Olsen v State of New York, 30 AD2d 759, affd 25 NY2d 665). It cannot be gainsaid that the most casual of observations by this plaintiff would have made it totally manifest that the jump from the bridge would result in a drop of some 25 feet into a body of water. He admittedly *113 was unaware of the true depth of the water, and was well aware of the potential danger of striking his head on the river bottom. As was said in Abenante v Balsamo (110 AD2d 802) the value of a warning is particularly questionable where the plaintiff knew or should reasonably have known what dangers were posed.
The plaintiffs argue that it was foreseeable that one would use the bridge as a springboard to enter the water. The warning to which the plaintiffs allude relate to the voluntary act of leaving the bridge from an area which was not designed for that purpose. If an act is not reasonably to be anticipated, or if its occurrence would in the eyes of reasonable people, be unlikely, it cannot be said that the event was foreseeable (Payne v City of New York, 277 NY 393). Of course, if it is not foreseeable, there is no duty to provide against it (Van Leet v Kilmer, 252 NY 454). There must also be a realization that the warning would have averted or avoided the injury as Judge Cardozo noted in Palsgraf v Long Is. R. R. Co. (supra).
Not every act is reasonably foreseeable, although it may be practically predictable. History tells us that people have ventured over Niagara Falls in a barrel. With this knowledge it can be said that since such an event took place before, there is the possibility that the act would be engaged in again. Similarly, the chronicles of time relate incidents of people projecting themselves from structures such as famous bridges and skyscrapers. With this knowledge, it could be said that similar acts are likely predictable. As was said in Van Leet v Kilmer (supra) sympathetic impulse must shield to law. The legal standard should not make the expectation foreseeable, although in some arcane sense there is a potential for its occurrence. Reckless acts of daredevils most likely will always be a part of societal aberrations. Morally, we may look upon ourselves as our brother’s keeper, but the duties of conscience will not always equate with that which is imposed by the law. To say that each must undertake the responsibility of preventing our fellow humankind from engaging in the folly of self-destruction would be to create a duty which is not only improbable, but would drain resources beyond the capacity of replenishment. To borrow the rationale of Judge Cooke in Pulka v Edelman (40 NY2d 781) consider a State like New York with its countless bridges. The burden which the plaintiff would ask the court to impose upon the several municipalities charged with the maintenance of these bridges would far exceed the ability of the municipalities to respond, especially *114 when one considers that the act of jumping from such a structure is beyond the control of each municipality no matter how diligent they may be in attempting to inhibit such events.
It is, therefore, concluded that by no sense of reason could it be said that the act of the injured plaintiff was foreseeable in a classical legal sense.
The argument of the defense concerning intervening cause also mitigates against any potential for recovery by the plaintiff. In this case Kevin Roberts had a sufficient awareness of the danger of his act so that the conclusion is compelling that no warning could have provided further insights. Common sense had to produce an awareness that his act was reckless, thus obviating liability in that no duty of warning or supervision was violated (Derdiarian v Felix Contr. Corp., 51 NY2d 308; Mack v Altmans Stage Light. Co., 98 AD2d 468; Boltax v Joy Day Camp, 67 NY2d 617; Smith v Stark, 67 NY2d 693).
Counsel for the plaintiff has brought to the attention of the court the recent decision in Mesick v State of New York (118 AD2d 214). That action involved the existence on State property of a rope attached to a tree which was used by the plaintiff and others as a means of projecting themselves into a body of water at a place called Honeysuckle Rock. The court found liability predicated upon the existence of a dangerous condition or instrumentality, namely, the rope which swung over a rocky area adjacent to the swimming hole (p 217).
There is no similarity between the finding in Mesick (supra) and this case. Certainly the bridge presented no condition or instrumentality of danger. In the cited case the court noted that the condition of danger could have been avoided by the simple expedient of cutting down the tree. It cannot be said with any sagacity that the danger in this case, if any existed, could have been avoided by removing the bridge. The theory of liability in each case differs substantially. The plaintiff herein proffers failure of a duty to warn whereas in Mesick it is the condition of the property which presented the danger.
In view of the observations made, the motion for summary judgment is granted, and the complaint is dismissed.