**Gregory CARABALLO, Plaintiff-Appellee,**

**v.**

**UNITED STATES of America, Defendant-Appellant.**

**No. 1225, Docket 87-6010.**

United States Court of Appeals, Second Circuit.

Argued June 1, 1987.

Decided Oct. 6, 1987.

Anne E. Stanley, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty. for E.D.N.Y., Robert L. Begleiter, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for defendant-appellant.

Benjamin Vinar, Flushing, N.Y. (Paul S. Mirman, Jeffrey H. Schwartz, Flushing, N.Y., of counsel), for plaintiff-appellee.

Before NEWMAN, CARDAMONE and WINTER, Circuit Judges.

CARDAMONE, Circuit Judge:

This appeal by the government is from a judgment of 1.2 million dollars in favor of plaintiff awarded in the United States District Court for the Eastern District of New York (Weinstein, Ch. J.) following a bench trial. Plaintiff brought suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* (1982), seeking damages for the injuries he suffered in an unfortunate diving accident in a national park. We reverse.

## I

Six years ago on a hot July 25th Saturday afternoon what began as a clamming expedition for a group of friends at Gateway National Recreation Area in Brooklyn, New York, ended in tragic consequences for one of the group, the plaintiff, Gregory Caraballo. On that day Caraballo, who was then 39 years old, and three friends drove to Gateway Park, parked Caraballo's auto in a parking area just off the eastbound side of the Belt Parkway, and walked a quarter of a mile along a footpath to the beach. The party arrived in mid-afternoon when the tide was up. While waiting for it to go down, plaintiff decided to go swimming. Just offshore, about 10 feet from the beach, stood the remnant of an old pier. This wood piling consisted of two vertical boards, the left of which—facing the water from the beach—was two feet, four inches high. The vertical board on the right was four feet, five inches high. These two vertical pieces were connected by a horizontal beam, 22 feet long and one foot wide.

Plaintiff testified that others were wading, swimming and diving off this wood piling, so he decided to go in. It was then five o'clock in the afternoon. He said that he walked out to the left side of the piling in water up to his knees; the water was about two feet deep. After climbing onto the horizontal beam, which was just about awash at its left end, plaintiff stated that he walked along its 22 foot length to the right end. Caraballo dove head first into the shallow water, struck his head on the sandy bottom, and suffered the most seri-

ous kind of injury—permanent quadriplegic paralysis.

As a result of this accident, Caraballo sued the government for negligence pursuant to the Federal Tort Claims Act. The trial court calculated his damages at $3.9 million, and having found plaintiff 70 percent negligent and the government 30 percent negligent, awarded plaintiff $1,170,-808.50. In determining that the government was 30 percent negligent, the district judge concluded that the government had failed adequately to warn that swimming and diving were prohibited. He found that whatever signs were present in the area were insufficient to warn the public—particularly the Hispanics who were heavy users of the area. The district court also credited plaintiff's witnesses who testified that there were inadequate patrols on the beach and found the wood piling to be an "attractive nuisance."

In its appeal from the judgment, the government contends that plaintiff's reckless conduct was the sole proximate cause of his injury, that it had no duty to warn the plaintiff about the wood piling, and that the "discretionary function exception," 28 U.S.C. § 2680(a) (1982), bars this suit.

## II

In considering the government's arguments, we begin by observing that in waiving its sovereign immunity under the Federal Tort Claims Act, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674 (1982). Under the Act, the law of the state where the tort occurred applies. 28 U.S.C. § 1346(b); *Hatahley v. United States*, 351 U.S. 173, 182, 76 S.Ct. 745, 752, 100 L.Ed. 1065 (1956); *Montellier v. United States*, 315 F.2d 180, 185 (2d Cir.1963). Because this incident occurred in New York, the law of that State controls.

A landowner in New York, such as the United States Park Service, must maintain its property in a reasonably safe condition under the circumstances. *Basso v. Miller*, 40 N.Y.2d 233, 241, 386 N.Y.S.2d 564, 352 N.E.2d 868 (1976). To prove that the

government was negligent in maintaining the beach where plaintiff was injured in Gateway Park, plaintiff was required to prove the existence of a duty toward him, a breach of that duty, and injury resulting as a proximate cause of defendant's breach of its duty. *See Akins v. Glens Falls City School District*, 53 N.Y.2d 325, 333, 441 N.Y.S.2d 644, 424 N.E.2d 531 (1981); W. Prosser, *Law of Torts* § 30 (4th ed. 1971).

### A. *Government's Negligence*

The district court concluded that the government was negligent because whatever signs existed were not in Spanish in an area heavily used by Hispanics, and because the beach was inadequately patrolled, as indicated by the fact that for some time on the day of the accident no one had stopped people from swimming and using the beach. The signage requirement appears troublingly overly-broad to us and, as will be seen in a moment, is a conclusion that we need not rule on in this case. In response to the adequacy of its patrol, the government claims it is absolved of such negligence under the "discretionary function" exception to the Federal Tort Claims Act. *See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) (certification of an airplane is discretionary function); *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) (government not liable for results that come from its establishing plans, specifications, or programs implicating policy judgments); *Wysinger v. United States*, 784 F.2d 1252, 1254 (5th Cir.1986) (Forest Service decision not to post lifeguard at site of fatal swimming accident absolves government under "discretionary function" exception). The discretionary function may not save the government from liability in this case because once it decides to act, it is responsible for its actions that are negligently carried out. *See Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955) (decision whether to operate lighthouse discretionary, but once made government required to operate it

without negligence); *Drake Towing Co., Inc. v. Meisner Marine Construction Co.,* 765 F.2d 1060, 1064 (11th Cir.1985) (same as to navigation aids).

■ Having decided to patrol, the Park Service is not absolved of liability on a claim of discretionary function for the manner in which it executed that decision. Whether or not the beach area where plaintiff was injured should be patrolled plainly was a discretionary decision for the Park Service to make, and the record supports the district court's finding that a patrol was instituted. A United States Park Police officer testified that to insure that the public does not swim in non-swimming areas at Gateway Park, the park service employs boat, canine and dirt-bike patrols. Having undertaken such all inclusive—by land, by sea and by dog—patrols, the government had a non-discretionary duty to carry them out in a non-negligent manner.

### B. *Proximate Cause*

■ Yet assuming, without deciding, that the government may have been negligent in some respect, we agree with its contention that plaintiff's reckless conduct was, as a matter of law, the sole proximate cause of his injury. Proximate or legal cause is defined as that "which in a natural sequence, unbroken by any new cause, produces that event and without which that event would not have occurred." *Rider v. Syracuse Rapid Transit Ry. Co.,* 171 N.Y. 139, 147, 63 N.E. 836 (1902). Where the actual cause of the injury is undisputed, the question of whether the defendant's negligence was the proximate cause of plaintiff's injury is a question of law for the court. *See Rivera v. City of New York,* 11 N.Y.2d 856, 857, 227 N.Y.S.2d 676, 182 N.E.2d 284 (1962); *see also Derdiarian v. Felix Contracting Corp.,* 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 414 N.E.2d 666 (1980). Under New York law when the actions of a third person or the plaintiff intervene between the defendant's conduct and the injury, the defendant is liable in negligence only when the intervening acts are a normal and foreseeable con-

sequence of defendant's conduct. *See Derdiarian,* 51 N.Y.2d at 315, 434 N.Y.S.2d 166, 414 N.E.2d at 666; *Restatement, Torts 2d,* § 441 (1965); Prosser, *supra,* § 44 (1971). Conversely, where the plaintiff's intervening actions are not a normal and foreseeable consequence of the defendant's conduct, the plaintiff's conduct becomes a superseding cause which absolves the defendant of liability. Plaintiff's conduct in this case was such a superseding cause.

In *Boltax v. Joy Day Camp,* 67 N.Y.2d 617, 499 N.Y.S.2d 660, 490 N.E.2d 527 (1986), New York's highest court assumed that the landowner's alleged negligence in allowing trespassers to gain entry to a swimming pool area, dangerously maintaining an inadequate level of water in the pool, and placing a lifeguard's chair at its shallow end was negligence that was a causative factor in plaintiff's injuries. The New York Court of Appeals nonetheless affirmed an order granting summary judgment to the defendant pool owner on the grounds that the plaintiff's reckless conduct was an unforeseeable superseding event that absolved the landowner of liability. *See id.* at 620, 499 N.Y.S.2d 660, 490 N.E.2d 527. Focusing on facts that parallel those of the instant case, the court stated that plaintiff was "an adult experienced in swimming and knowledgeable about the general dangers of diving, who admitted his familiarity with ... the water level[ ] ..., yet chose to dive head first ... into [the] shallow water...." *Id.*

Similarly, in *Smith v. Stark,* 67 N.Y.2d 693, 499 N.Y.S.2d 922, 490 N.E.2d 841 (1986), a pool manufacturer and installer was found not liable even though it had failed to apprise users of the comparative depth of the pool by the use of markers or otherwise. The 18–year old plaintiff, the New York Court of Appeals held, was an experienced swimmer who had observed a diving board at one end of the pool and then dove into the opposite end where it was shallow. The court concluded that under such circumstances the lack of depth warning devices was not the proximate cause of plaintiff's injuries. *Id.; see also Belling v. Haugh's Pools, Ltd.,* 126 A.D.2d

958, 511 N.Y.S.2d 732 (4th Dep't 1987); *Roberts v. Town of Colchester*, 134 Misc.2d 109, 509 N.Y.S.2d 975 (N.Y.Sup.1986).

 At the time of the accident, plaintiff was a 39-year old adult who had been swimming many times before. The district court stated that the depth of the water where plaintiff dove "was two-and-a-half or three feet. The shallowness was clearly visible from the point at which [plaintiff] was diving and people were wading and swimming in the area. It should have been observed from their own height what the depth of the water was." Under these circumstances, it was not the government's failure to post signs or its failure adequately to patrol that caused plaintiff's injury. The proximate cause of plaintiff's injury was his own act—which was unhappily so harmful to him—of diving head first into water that was observably shallow. That unfortunate error of judgment was an unforeseeable superseding cause which bars liability from attaching against the United States.

### III

Accordingly, the judgment is reversed and the complaint dismissed.