**Thomas R. WINANT, Jr., and Darlene Winant, Plaintiffs,**

v.

**CAREFREE POOLS, Defendant.**

**No. CV 87–1606.**

United States District Court, E.D. New York.

March 17, 1989.

Daniel P. Buttafuoco, Mineola, N.Y., for plaintiffs.

Curtis, Zaklukiewicz, Vasile & Devine by Brian W. McElhenny, Merrick, N.Y., for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

In this diversity action plaintiffs seek recovery for personal injuries stemming

from plaintiff Thomas R. Winant's ("Winant" or "plaintiff") dive into the shallow end of an inground swimming pool manufactured by defendant Carefree Pools. Although the manufacturer of the swimming pool liner, Seaspray–Sharkline, Inc., was originally named as a defendant, that action has been discontinued.

Presently before the Court is defendant's motion for summary judgment. Before addressing the motion, the Court will outline the relevant facts.

## I. *Background*

Although the parties disagree regarding the underlying cause of plaintiff's injury, the following facts, taken directly from plaintiff's deposition, are not in dispute.

### A. *Plaintiff's Knowledge of the Pool*

Plaintiff testified that on the date of his accident, July 4, 1985, he was visiting at his parents' home, where there was a party in honor of his thirty-third birthday. In his parents' backyard there was an inground swimming pool that had been installed in 1974. According to plaintiff, the pool was oval and approximately seventeen feet wide and thirty-five feet long. The water in the shallow end of the pool was three feet deep, but approximately twelve feet from the shallow end the depth of the pool's water began gradually to deepen, until it reached its maximum depth of approximately eight feet at the deep end where the diving board was located.

Plaintiff had used his parents' pool frequently since its installation ten years prior to his accident. He was completely familiar with its layout; that is, he knew which was the shallow end, which was the deep end and approximately where the water depth began to change. Winant swam in the pool on many occasions, dove into the water from various spots around the pool, and entertained his children in the shallow water in the pool. He was aware that the shallow end of the pool was only about three feet deep.

At his deposition, plaintiff testified that he was aware that the diving board was located on the far end of the pool and

conceded that on occasion he had used the diving board to dive into the pool. Winant further testified that on the date of his accident he knew that both the board and the deep end of the pool were at the opposite end of the pool from where he dove. Plaintiff stated that he knew which end of the pool was the shallow end, and he was aware that the water in the shallow end of the pool only reached his waist. Furthermore, Winant acknowledged that at the time of his accident he was a proficient swimmer and diver, having used not only his parents' pool for more than ten years, but other inground pools as well.

The Court finds it particularly relevant in this case that plaintiff had not only a general knowledge that the depth of the pool water gradually began to deepen, but, by virtue of his use of this very pool during the previous ten years, plaintiff also knew the specific area where the depth of the water changed.

### B. *The Accident*

Plaintiff's accident occurred shortly after he arrived at his parents' home. He had not been swimming on that day and was still clad in shorts, a shirt and sneakers when he dove into the pool. According to plaintiff, he was standing alongside the shallow end of the pool facing towards the deep end, when a friend began approaching him in a menacing manner, threatening to throw plaintiff into the pool. As his friend came near, plaintiff admitted that he quickly turned and dove into the shallow water in order to avoid being pushed in.

Plaintiff described his tragic plunge into the pool as a shallow dive, during which his arms were fully extended over his head with his index fingers touching each other. He dove from alongside the shallow end of the pool, where he had been standing, facing towards the rear of the yard, where the deep end of the pool was located.

This unfortunate scenario, as plaintiff's testimony painfully reveals, was one in which plaintiff reacted in haste in an effort to avoid a friend's menacing behavior. In doing so, plaintiff did not look to see where

he was diving; he merely turned and quickly dove into the water. Tragically, plaintiff's head struck the flat bottom of the shallow end of the pool and he remains a quadriplegic as a result of his injuries.

## II. *Defendant's Motion*

### A. *The Parties' Submissions*

In support of its motion for summary judgment, defendant has submitted a Memorandum of Law, Reply Memorandum of Law, a statement pursuant to Local Rule 3(g) of this Court (a "Rule 3(g) Statement"), and various other affidavits and supporting papers. Plaintiff's papers in opposition include a Memorandum of Law, Rule 3(g) Statement, expert's report, a statement from a former executive of defendant, Carefree Pools, and various other papers in opposition to defendant's motion for summary judgment. In addition to these papers, Winant's deposition is before the Court.

Both plaintiff and defendant have submitted sur reply Affirmations. These documents add little of substance to the parties' positions but rather merely attempt, once again, to discredit the opposing party's allegations.

### B. *Plaintiff's Theories of Liability*

Plaintiff maintains that the pool manufactured by defendant was defectively designed in that it was installed without proper lighting, with a confusing liner pattern, and a filter jet that disturbed the water's surface. Plaintiff argues that these defects created a deceptive and confusing appearance of the water's depth by camouflaging the point at which it began to change. This condition allegedly prevented plaintiff from discerning the exact depth of the water into which he dove.

In addition, plaintiff contends that the manufacturer failed to provide adequate warnings of the danger of diving into the area of the pool where plaintiff dove on July 4, 1985, and that the sand base beneath the pool, as well as the "uncharacteristically" flat bottom of the shallow end of the pool, are design defects that did not allow plaintiff's head to deflect upon impact. In support of these contentions plaintiff offers the testimony of his expert, Milton Costello, who cites these various defects as contributing factors to plaintiff's injuries.

### C. *Defendant's Position*

Defendant maintains that the sole proximate cause of plaintiff's injuries was his own reckless behavior in diving into what he knew was the shallow end of the swimming pool. Therefore, defendant argues, plaintiff did not sustain his injuries as a result of any alleged failure to warn or design defect on the part of Carefree Pools.

## III. *Discussion*

■ Defendant has moved pursuant to Rule 56 of the Federal Rules of Civil Procedure for the entry of summary judgment. A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56, *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Donahue v. Windsor Locks Bd. of Fire Commissioners,* 834 F.2d 54, 57 (2d Cir.1987). The burden is upon the moving party to clearly establish the absence of a genuine issue as to any material fact, and the Court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Donahue,* 834 F.2d at 57.

Since the presence of only a genuine and material issue of fact precludes the entry of summary judgment, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), the summary judgment procedure allows the Court to determine whether a trial is necessary and to dispose of a claim that is meritless. Summary judgment must, however, be "used selectively to avoid trial by affidavit." *Donahue,* 834 F.2d at 57.

Under New York law an "essential element of liability for negligence" is that defendant breach a duty owed to the plaintiff. *Dore v. Schultz,* 582 F.Supp. 154, 157

(S.D.N.Y.1984). Further, for plaintiff to prevail, he must prove that defendant's breach proximately caused his injury. *O'Toole v. Greenberg,* 64 N.Y.2d 427, 488 N.Y.S.2d 143, 477 N.E.2d 445 (1985).

The concept of proximate cause "stems from policy considerations that serve to place manageable limits upon the liability that flows from negligent conduct." *Derdiarian v. Felix Contracting Corp.,* 434 N.Y.S.2d 166, 169, 414 N.E.2d 666, 669 (1980). *See also Bonsignore v. City of New York,* 683 F.2d 635, 637–38 (2d Cir. 1982). Plaintiff, to carry his burden of proof in establishing proximate cause, must "show that the defendant's negligence was a substantial cause of the events which produced the injury." *Derdiarian,* 434 N.Y.S.2d at 169, 414 N.E.2d at 669; *see also Bonsignore,* 683 F.2d at 637.

Although the issue of proximate cause is usually for the finder of fact, "where only one conclusion may be drawn from the established facts, the question of legal cause may be decided as a matter of law." *Derdiarian,* 434 N.Y.S.2d at 170, 414 N.E. 2d at 669–70.

As noted above, plaintiff alleges that the defective design and manufacture of the pool as well as defendant's failure to warn that diving into this area of the pool could result in serious injury, was the legal cause of plaintiff's injury. Where, as here, however, an intervening act, such as plaintiff's dive, contributes to his injuries, "liability turns upon whether the intervening act is a foreseeable consequence of the situation created by the defendant's negligence." *Id.* 434 N.Y.S.2d at 169, 414 N.E.2d at 669. Under New York law the defendant is liable "only when the intervening acts are a normal and foreseeable consequence of defendant's conduct." *Caraballo v. United States,* 830 F.2d 19, 22 (2d Cir.1987); *see also Derdiarian,* 434 N.Y.S.2d at 169, 414 N.E.2d at 669.

On numerous occasions the Second Circuit, applying New York law, and New York state courts have confronted cases based on nearly identical facts to those presented here. These courts have concluded, uniformly, that plaintiff's reckless conduct constitutes a superceding act that makes it impossible to prove that defendant's conduct is the proximate cause of the injuries sustained. Instead, the great weight of authority holds that in situations such as that presented here, it is the plaintiff's own conduct that constitutes the proximate cause of his injury.

For example, in *Kelsey v. Muskin Inc.,* 848 F.2d 39 (2d Cir.1988), plaintiff was injured when he dove into an above-ground swimming pool. The district court granted the defendant's motion to dismiss for lack of proximate cause "on the ground that, based on his prior experience, [plaintiff] should have been aware of the dangers of diving head-first into the pool...." *Id.* at 41. Holding that the lower court properly found "that there was no genuine issue as to the fact that [plaintiff's] own conduct was the proximate cause of his injuries," the Court of Appeals for the Second Circuit affirmed. *Id.* at 42.

■ Plaintiff contends that *Kelsey* is inapposite because it deals solely with warnings, not design defects, and Winant needed to be warned of the danger of diving into his parents' defectively and deceptively designed pool. Plaintiff's attempt to distinguish *Kelsey* is without merit. Here, as in *Kelsey,* plaintiff was completely familiar with this swimming pool and he knew he was standing at the shallow end when he dove. Since the danger of diving into the shallow end of a swimming pool is a risk that is obvious, and because "there is no liability for failing to warn of obvious dangers, those that would be appreciated by the user to the same extent the warning would have provided" no liability can attach to defendant, Carefree Pools, in this case. *Belling v. Haugh's Pools, Ltd.,* 126 A.D.2d 958, 511 N.Y.S.2d 732 (1987) (citing Prosser & Keeton on Torts [5th ed.], p. 686). Therefore, failure to warn could not have been a proximate cause of plaintiff's injury.

Moreover, as the *Kelsey* Court held, under New York law, a plaintiff, such as Winant, who dives into a pool " 'with actual or constructive knowledge that the depth will not permit such action safely, has dis-

regarded an obvious or known danger and ... will be considered the sole proximate cause of his or her injuries.'" *Kelsey*, 848 F.2d at 41 (citing Memorandum Decision and Order dated June 25, 1987, at 13).

Similarly, in *Caraballo v. United States*, 830 F.2d 19 (2d Cir.1987), the plaintiff dove into three feet of water in a federal recreation area and was left a quadriplegic as a result of his dive. He sued the United States based on its failure to post warnings, in Spanish, advising potential swimmers of the danger of diving in the area.

The District Court awarded damages to the plaintiff but the Second Circuit Court of Appeals reversed. The appellate court held that under New York law, plaintiff's own conduct of diving into water, the shallowness of which he should have observed, and not the defendant's failure to post warning signs, was the sole proximate cause of plaintiff's injury. *Caraballo*, 830 F.2d at 23. The Court defined proximate cause as that " 'which in a natural sequence, unbroken by any new cause, produces that event and without which that event would not have occurred.' " *Id.* at 22 (citing *Rider v. Syracuse Rapid Transit Ry. Co.*, 171 N.Y. 139, 147, 63 N.E. 836 (1902)). Because it viewed plaintiff's reckless dive as a break in the causal chain, the *Caraballo* Court concluded that plaintiff's "unfortunate error of judgment was an unforeseeable superseding cause which bars liability from attaching against the United States." *Id.* at 23.

■ Plaintiff claims that *Caraballo* is inapplicable because in the present case Winant's act of diving into the shallow water was a normal, foreseeable consequence of the defective design of the pool. The Court holds, however, that it is not a normal or foreseeable consequence of defendant's manufacture or design of the pool that an experienced swimmer and diver with intimate knowledge of the swimming pool, knowing he was standing at the shallow end of the pool, would disregard the obvious risk and attempt to negotiate a dive into water that he knew was shallow. Rather, it is patently clear that plaintiff's conduct, as detailed in his deposition,

evinced a disregard of the obvious dangers. By choosing to recklessly dive into the shallow end of his parents' pool, plaintiff demonstrated indifference to the obvious risk to life and limb that could result. Plaintiff's reckless conduct was an unforeseeable intervening event and, therefore, a superseding cause of his injury "which absolves the defendant of liability." *Caraballo*, 830 F.2d at 22. In the instant case, as in *Caraballo*, plaintiff's reckless dive into water, the shallowness of which should have been obvious to him by virtue of his ten years experience swimming in this very pool, was likewise an unforeseeable superseding cause of injury.

Several New York Court of Appeals and Appellate Division decisions reveal similar dispositions of these types of cases. These courts have also granted summary judgment relieving manufacturers of liability for alleged design defects in inground swimming pools when the plaintiff's own reckless conduct is the proximate cause of his injuries.

For example, in *Smith v. Stark*, a case with facts strikingly similar to those in the present action, the Court of Appeals affirmed the Appellate Division's dismissal of plaintiff's complaint against the manufacturer and installer of an inground residential swimming pool. *Smith*, 67 N.Y.2d 693, 499 N.Y.S.2d 922, 490 N.E.2d 841 (1986). The plaintiff in *Smith* suffered serious physical injuries when he either dove or was thrown into the shallow end of the pool. He sought to recover from the pool manufacturer for failure to "place depth markers at appropriate locations around the pool or take other measures to apprise prospective users of the comparative depth of the water." *Id.* 499 N.Y.S.2d at 923, 490 N.E.2d at 842. The Court in *Smith* concluded that "[b]y virtue of plaintiff's general knowledge of pools, his observations prior to the accident [i.e., that the diving board was located at the opposite end of the pool], and plain common sense, plaintiff must have known that if he dove into the pool, the area into which he dove contained shallow water." *Id.*

In *Smith*, as here, the absence of warnings regarding the depth of the water could not have been the proximate cause of plaintiff's injuries. As established above, the plaintiff in the case at bar possessed not merely a general knowledge of swimming pools. Rather, Winant had complete familiarity with the swimming pool in which his injuries occurred. Plaintiff admitted that he swam in his parents' pool for a period of more than ten years, he dove from various locations around the pool, including the diving board, and he knew which was the shallow end and which was the deep end. The Court also finds it significant that, by his own admission, plaintiff knew he was standing alongside the shallow end of the pool, and that his decision to dive into the water was made quickly as a reaction to another person's threatening behavior. Under these circumstances it is evident that any warning provided by the manufacturer would merely have served to tell the plaintiff that which he already knew: he was standing alongside the shallow end of the pool. Based on these undisputed facts "and plain common sense, plaintiff must have known that if he dove into the pool, the area in which he dove contained shallow water." *Id.*

Finally, in *Boltax v. Joy Day Camp*, 67 N.Y.2d 617, 499 N.Y.S.2d 660, 490 N.E.2d 527 (1986), the New York Court of Appeals ruled that the conduct of an experienced swimmer and diver, "who admitted his familiarity with the various water levels at each part of the pool" but who, nevertheless, chose to dive into the shallow water, was an unforeseeable superseding cause of his injury. *Id.* 499 N.Y.S.2d at 661, 490 N.E.2d at 528. Thus, the defendants in that action were absolved of liability even if, according to the court, their negligent conduct was a causative factor in the plaintiff's injuries. *Id.* As this Court has noted above in detail, Winant also admitted, throughout his deposition, that he was familiar with inground pools in general, and with his parents' pool in particular. Thus, here, as in *Boltax*, it is eminently clear that "the injuries sustained by plaintiff were not proximately caused by any act or omission on [defendant's] part, and that the

miscalculated dive was the sole cause of his injury." *Boltax*, 113 A.D.2d 859, 493 N.Y. S.2d 590 (1985).

Plaintiff maintains that *Boltax* is distinguishable because it presents no question of defective design of the pool. Contrary to plaintiff's contentions, the *Boltax* court addressed this issue, and concluded that there was no "evidence of any defect in the construction of the pool aside from the conclusory and self-serving allegations offered by plaintiff's counsel." *Boltax*, 493 N.Y.S.2d at 592. Similarly, it is unnecessary for this Court to address whether there were defects in the design of the pool in the present case.

Where, as here, only one conclusion can "be drawn from the established facts ... the question of legal cause may be decided as a matter of law." *Derdiarian*, 434 N.Y. S.2d at 170, 414 N.E.2d at 669–70. This Court concludes that the established facts in this case belie plaintiff's contention that there is any legal cause of plaintiff's injury other than plaintiff's own reckless conduct. *Accord Howard v. Poseidon Pools, Inc.*, 72 N.Y.2d 972, 534 N.Y.S.2d 360, 530 N.E.2d 1280 (1988). The Court, therefore, holds that plaintiff's conduct was, as a matter of law, the sole proximate cause of his injury.

## CONCLUSION

As the foregoing discussion makes clear, the Court has thoroughly reviewed the parties' submissions. It is apparent, however, that even viewing the facts in the present case in the light most favorable to the plaintiff, there is no genuine issue as to the fact that plaintiff's own conduct was the sole proximate cause of his injuries. Applying the cases referred to above, this Court concludes that plaintiff knew or should have known that the depth of the water where he dove would not permit a safe dive. Plaintiff disregarded the obvious dangers of such action. His reckless action broke the causal chain between the alleged defects in the pool and plaintiff's injury. Accordingly, this Court holds that Winant's own conduct was, as a matter of law, the sole proximate cause of his injury. Plaintiff's injuries were the result of his

reckless and miscalculated dive into the shallow water, and were not caused by any defect in the design of the pool or failure of the manufacturer to warn of the danger. Therefore, defendant's motion for summary judgment is granted.

SO ORDERED.