Felix SANCHEZ and Brenda Sanchez, Plaintiffs,

v.

Dennis BELLEFEUILLE, Defendant and Third–Party Plaintiff,

v.

UNITED STATES DEPARTMENT OF JUSTICE, Immigration and Naturalization Service, United States Border Patrol, Third–Party Defendants.

No. 90–CV–1081.

United States District Court, N.D. New York.

June 20, 1994.

John A. Piasecki, Malone, NY, for plaintiffs.

Carusone & Muller (Robert J. Muller, of counsel), Glens Falls, NY, for defendant and third-party plaintiff.

Gary L. Sharpe, U.S. Atty. (William A. Larkin, Asst. U.S. Atty., of counsel) Northern Dist. of N.Y., Syracuse, NY, for third-party defendants.

### MEMORANDUM–DECISION AND ORDER

MUNSON, Senior District Judge.

This personal injury action accrued on July 30, 1989 when defendant and third-party plaintiff Dennis Bellefeuille drove through a temporary United States Border Patrol checkpoint located in North Hudson, New York. As he passed through the checkpoint, defendant Bellefeuille's automobile struck plaintiff Felix Sanchez, a Border Patrol Agent. Plaintiff and his wife sued defendant on a theory of negligence, and defendant filed a third-party complaint, claiming that the United States Border Patrol ("the Border Patrol") was negligent in establishing and maintaining the temporary checkpoint. Currently before the court is a motion by the Border Patrol for summary judgment dismissing the third-party complaint in its entirety pursuant to Fed.R.Civ.P. 56(c).

### I. BACKGROUND

On July 30, 1989 defendant Dennis Bellefeuille and his girlfriend, Johanne L'Allier, were driving south through New York State on I–87 en route from Quebec, Canada to Wildwood, New Jersey. Bellefeuille set the cruise control on his 1989 Chevy Cavalier at 100 km (62 m.p.h.). At around 2:00 a.m., while driving through the town of North Hudson, Bellefeuille came upon flashing lights on the side of the highway. Because he only saw one sign, a flashing yellow arrow indicating that the left lane was closed ahead, defendant believed he was approaching an inactive construction site. Since he was al-

ready in the right lane, and since traffic was light, defendant did not disengage his cruise control. Defendant maintained his speed until he realized that he would be forced to enter a rest area adjacent to the highway. Unable to stop, and maneuvering to avoid several cars that were stopped at the checkpoint, defendant first struck a sign and then struck plaintiff Felix Sanchez as he walked across the road. As a result of the incident, plaintiff suffered serious injuries.

The parties dispute the actual number and design of the warning signs on the highway at the time of the accident. Defendant contends that there was only one flashing yellow arrow and a series of traffic cones on the left-hand side of the road. Third–Party defendant Border Patrol counters that there were a number of signs, beginning approximately one and one quarter miles in advance of the checkpoint, and continuing into the checkpoint itself. Among these signs were two sets of "Stop Ahead" signs (one on each side of the road) in excess of one half mile from the checkpoint. The Border Patrol asserts that each sign was located on a stand and had two blinking lights below it.

According to the record, several explanations have been offered as to why defendant was unable to stop his car. Defendant initially claimed in a statement made to police that he thought he applied his brakes, but he "may have been stepping on the gas instead of the brake because [his] car went faster and faster." Accident Report, Exhibit ("Exh.") 1 attached to Document ("Doc.") 9, at 2. Defendant later stated that the accident did not result from any mechanical or other defect in his vehicle. Response to Third–Party Defendant's Interrogatories, Exh. 4 attached to Doc. 9. Ms. L'Allier's statement to the police at the time of the incident contradicts defendant's original explanation; she claimed that defendant attempted to apply the brakes but his cruise control would not disengage. In opposition to the present summary judgment motion, defendant has adopted L'Allier's version of

events, and now claims that his cruise control malfunctioned.

Plaintiffs filed the initial complaint in this action on October 4, 1990. Bellefeuille filed the third party complaint against the Border Patrol on October 9, 1993, pursuant to the Federal Tort Claims Act ("the Act" or "FTCA"), 28 U.S.C. §§ 2671–2680. This latter complaint alleges negligence by the Border Patrol in establishing and maintaining the temporary traffic checkpoint where plaintiff Felix Sanchez was injured, and seeks indemnification and/or contribution from the Border Patrol in the event plaintiffs obtain judgment against defendant Bellefeuille.

The Border Patrol moves for summary judgment based upon two arguments. First, the Border Patrol argues that the court lacks jurisdiction because any act or omission on its part falls within the performance of a discretionary function, which is excepted from suit under the FTCA. Second, the Border Patrol asserts that defendant can not establish that the alleged negligence of the government was a proximate cause of the accident.

In response to the Border Patrol's motion, defendant offers the affidavit of Jack Humphreys, a civil engineer who specializes in traffic engineering. Humphreys claims that the checkpoint was not in conformity with the specifications of the Immigration and Naturalization Service Border Patrol Handbook ("the Handbook"), which sets forth the requirements for the establishment and maintenance of temporary traffic checkpoints by the Border Patrol. Humphreys also asserts that the checkpoint layout was generally unsafe. In particular, Humphreys points out that the Handbook requires that approaching motorists have a half-mile line of sight to the stopping point. In this case, Humphreys claims, motorists had a direct line of sight only when they were 1200 feet from the stopping point. Humphreys also questions the use of flashing lights instead of steady burning lights, which Humphreys claims has the effect of distracting motorists, as well as the use of cones at night, and the placement of the lights.[1]

---

1. Plaintiffs take no position on this motion. *See* Letter from Attorney Piasecki to Court, dated September 21, 1993, Doc. 38.

## II. DISCUSSION

### A. Summary Judgment Standards

Under Federal Rule of Civil Procedure 56(c) summary judgment shall enter if, when viewing the evidence in the light most favorable to the nonmovant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Eastman Kodak Co. v. Image Technical Servs., Inc.,* —— U.S. ——, ——, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Commander Oil v. Advance Food Serv. Equip.,* 991 F.2d 49, 51 (2d Cir.1993). Where the moving party does not bear the ultimate burden of proof on an issue, that party satisfies its summary judgment burden by pointing to the absence of evidence to support an essential element of the non moving party's claim. *Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 572 (2d Cir.1993). Where the movant does shoulder the burden of proof, it must establish that there is no genuine issue of material fact to be decided regarding any element of that party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In either case, if the movant satisfies its initial summary judgment burden, then the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists. *Weg v. Macchiarola,* 995 F.2d 15, 18 (2d Cir.1993). To survive the motion for summary judgment the nonmovant must do more than present evidence that is merely colorable, conclusory, or speculative, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986), and furthermore must show more than "some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). In other words, the nonmovant must demonstrate that there are issues of fact that must be decided by a factfinder, because "they may reasonably be decided in favor of either party." *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990).

With these rules in mind, the court turns to the specific arguments raised on the Border Patrol's motion for summary judgment.

### B. The Discretionary Function Exception

The FTCA is a limited waiver of the sovereign immunity of the United States. Among other things, the Act generally authorizes suits against the government for damages for personal injuries

> caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). This waiver is subject to a number of exceptions, including what is commonly referred to as the discretionary function exception, under which § 1346(b) does not extend to

> any claim based upon any act or omission of an employee of the Government ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). Because section 2680(a) is a limitation on the waiver of sovereign immunity, the court lacks jurisdiction to entertain claims to which it applies. *Fazi v. United States,* 935 F.2d 535, 537 (2d Cir. 1991); *Attallah v. United States,* 955 F.2d 776, 783 (1st Cir.1992).

To determine whether conduct falls within this discretionary function exception, the court conducts a two-tiered analysis, focusing upon the nature of the challenged conduct, rather than the purported negligence of the actor. *United States v. Varig Airlines,* 467 U.S. 797, 813–14, 104 S.Ct. 2755, 2764–65, 81 L.Ed.2d 660 (1984). The first inquiry is whether the challenged acts of the government employee involved a matter of choice for the acting employee, for "conduct cannot be discretionary unless it involves an element of judgment or choice." *Berkovitz by Berkovitz v. United States,* 486

U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988). Thus when "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," the discretionary exception of § 2680(a) does not apply. *Id.* at 536, 108 S.Ct. at 1958; *Baum v. United States,* 986 F.2d 716, 720 (4th Cir.1993). In other words, "if the employee violates the mandatory regulation, there will be no shelter from liability because there is no room for choice." *United States v. Gaubert,* 499 U.S. 315, 324, 111 S.Ct. 1267, 1274, 113 L.Ed.2d 335 (1991).

 If no mandatory statute, regulation or policy applies, thereby affording government actors discretion in their actions, the court must further determine whether the choice or judgment involved in the exercise of discretion is of the kind that the discretionary function exception was designed to shield. *Berkovitz,* 486 U.S. at 531, 108 S.Ct. at 1954; *Gaubert,* 499 U.S. at 322–23, 111 S.Ct. at 1273–74; *Attallah,* 955 F.2d at 783. The basis for the discretionary function exception was Congress' desire to "prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Berkovitz,* 486 U.S. at 536–37, 108 S.Ct. at 1958–59 (quoting *Varig Airlines,* 467 U.S. at 814, 104 S.Ct. at 2764–65). Only if the exercise of discretion involves such considerations does the discretionary function exception apply.

In the instant case, Bellefeuille charges that the Border Patrol acted negligently in (1) failing to provide a one-half mile clear, unobstructed view of the checkpoint, (2) failing to abide by the requirements of the United States Department of Transportation's Manual on Uniform Traffic Control Devices ("MUTCD"), (3) failing to conduct an engineering study of the site prior to selecting it as a checkpoint location, and (4) employing improper traffic control devices, thereby confusing drivers and failing to provide adequate warning to drivers that they would be required to exit the highway and come to a complete stop. *See* Memorandum of Law in Opposition to Summary Judgment, Doc. 35, at 4–5.

Each of these four areas of conduct are specifically addressed in the Border Patrol Handbook. The Handbook provides that

[t]raffic checkpoints must be selected to allow oncoming traffic a clear, unobstructed view of the operation for at least one-half mile. This is considered the minimum safe distance for slowing and stopping. . . . During hours of darkness, lights should be used to draw the attention of motorists to the signs. . . . Motorists must be clearly aware they will be required to stop.

Border Patrol Handbook, Exh. C, Doc. 30, at 9–8. While the Handbook notes that the selection of a checkpoint site is left largely to the discretion of the Border Patrol, the above language clearly places a mandatory limitation on the Border Patrol's discretion.

Similarly, the amount and type of traffic control equipment employed at the checkpoint site is expressly set forth in the Handbook, although the arrangement of those devices is left to the discretion of the Border Patrol. Handbook, Exh. C, Doc. 30, at 9–3—9–4.

 Because the Handbook imposes a duty on the Border Patrol to allow for one-half mile visibility of the checkpoint operation, and to employ a minimum number of traffic control devices, compliance with these requirements does not involve choice or discretion. Thus the discretionary function exception does not apply to the conduct of the Border Patrol in these two areas.

As to the remaining two areas of conduct, the Handbook states only that "[a]ll border patrol traffic locations, signs and other equipment *should* conform to state and federal instructions set out in [the MUTCD]" and that "the decision to use particular signs or devices at a particular location *should* be made on the basis of an appropriate engineering study." Handbook, Exh. C, Doc. 30, at 9–10 (emphasis added). The Border Patrol interprets these provisions as discretionary.

 An agency's interpretation of its own regulations is entitled to substantial deference and ordinarily is accorded controlling weight unless clearly erroneous. *Kelly v. United States,* 924 F.2d 355, 361 (2d Cir.

1991). In the instant case, the Border Patrol's interpretation of the word "should" is not clearly erroneous. The Handbook clearly distinguishes between activities which "should" be and those which "must" be performed. *Compare* Handbook, Exh. C, Doc. 30, at 9–8 ("checkpoints must be selected to allow oncoming traffic a clear, unobstructed view of the operation for at least one-half mile") *with id.* at 9–9 ("agents who stop vehicles and interrogate the occupants should be rotated frequently"). Because the Immigration and Naturalization Service ("INS") clearly distinguishes in the Handbook between advisory provisions and mandatory requirements, the court concludes that the INS was capable of making the disputed provisions mandatory, but chose instead to preserve the discretion of the Border Patrol. Because the Border Patrol's interpretation of the Handbook is not clearly erroneous, and the performance of an engineering study and placement of signs are discretionary, the court turns to the second prong of the discretionary function analysis. Under that prong, the court must determine whether the choice or judgment involved in the exercise of the Border Patrol's discretion is the kind that the discretionary function exception was designed to shield. *Berkovitz,* 486 U.S. at 531, 108 S.Ct. at 1954.

The Border Patrol argues that its discretion in establishing checkpoints reflects a tension between the competing policy objectives of maintaining minimum safety standards and fulfilling the Border Patrol's mission of apprehending illegal aliens. These dual goals certainly play a role in the selection of a checkpoint site. On one hand, it is more conducive to traffic safety to have as long a clear view as possible to the search area. This affords motorists ample opportunity to slow and stop their vehicles. On the other hand, such a view also allows illegal aliens an opportunity to evade the Patrol. Because the purpose of the checkpoint is to catch such aliens off guard and without warning, it makes sense to make such checkpoints undetectable until close to the point where the stop is actually to take place.

Nonetheless, these policy considerations are not relevant to the performance of an engineering study or the decision of whether to follow MUTCD guidelines. These tasks relate solely to the safety of motorists passing through the checkpoint, and do not implicate the element of surprise. Thus the choices made did not involve the weighing of public policy considerations, and therefore can not be classified as choices that fall within the discretionary function exception.

Because none of the four challenged actions falls within the discretionary function exception of the FTCA, the court concludes that it has jurisdiction over the third-party complaint.

### C. *Evidence Regarding Conformity to Border Patrol Handbook*

The court's analysis is not complete at this point. In so far as the court has identified mandatory duties on the part of the Border Patrol, it must next determine whether the Border Patrol acted in conformity with the mandatory requirements as set forth in the Handbook. *Gaubert,* 499 U.S. at 324, 111 S.Ct. at 1274.

Turning to that issue, the court must first resolve a dispute between the parties over the meaning of the word "operation" as used on page 9–8 of the Border Patrol Handbook, which requires the Border Patrol to select a checkpoint site such that "oncoming traffic [has] a clear, unobstructed view of the operation for at least one-half mile." Exh. C, Doc. 30. Defendant argues that the quoted provision requires the Border Patrol to select a location that affords the motorist an opportunity to see the location at which the Border Patrol actually stops vehicles. Memorandum of Law in Opposition to Summary Judgment, Doc. 35, at 11. The Border Patrol asserts that the word "operation" actually refers to the beginning of the signs leading up to the location where the Border Patrol conducts its investigation. Under that construction, it argues, its mandatory duty was met. Memorandum of Law in Support of Summary Judgment, attached to Notice of Motion, Doc. 29, at 18–20.

As already stated, an agency's interpretation of its own regulations is entitled to judicial deference. *Kelly,* 924 F.2d at

361. If an agency's interpretation is a reasonable construction of the regulation, the court must uphold that interpretation. *See Detsel by Detsel v. Sullivan,* 895 F.2d 58, 62–63 (2d Cir.1990). In the instant case, the Border Patrol's interpretation is reasonable in light of the imprecise use of the term "operation" in the Border Patrol Handbook.

Other than the passage at issue, the word "operation" appears in the Handbook only once. The introduction to Chapter Nine of the Handbook states that "[t]raffic check is a border patrol operation that consists of the examination of occupants of vehicles on roads and highways...." Handbook, Exh. C, Doc. 30, at 9–1. This statement seems to equate "operation" with the process of examining vehicles, which takes place where vehicles actually stop. The context of the statement implies that "operation" applies to the actual stopping point.

Yet the Handbook clearly distinguishes between the traffic checkpoint operation as a whole, and the "actual stopping point." *Id.* at 9–5 ("STOP AHEAD signs ... are placed on each side of the highway at least one-half mile from the actual stopping point"). Because the Handbook specifies the actual stopping point in some instances, the court concludes that had the INS intended the term "operation" in the disputed passage to mean "the actual stopping point," as defendant asserts, it simply would have said so.

The court holds that the Border Patrol's interpretation of "operation" as the entire setup, from the first warning signs to the actual stopping point, is reasonable and therefore controls. Under that interpretation, there is no genuine issue of material fact as to whether the Border Patrol met the requirement of providing a half-mile unobstructed view of the checkpoint operation. Therefore, in so far as the Border Patrol's motion for summary judgment is based on defendant's claim that the Border Patrol failed to provide a one-half mile unobstructed view of the checkpoint operation, the motion is granted.

■ As to the second mandatory duty of the Border Patrol, to employ a minimum number of safety control devices, a genuine issue of fact exists. Defendant states in his deposition that the only traffic control devices he saw were a flashing yellow arrow, indicating that drivers were required to change lanes, followed by a series of traffic cones. Deposition Transcript, Exh. 1, Doc. 18, at 74. Defendant's deposition testimony is somewhat contradicted by the affidavit of Jack Humphreys, defendant's own expert, who notes that flashing red and yellow lights were employed. Humphreys Affidavit, Doc. 17, at ¶¶ 4–5. Nonetheless, Humphreys expresses no opinion as to whether the minimum number of safety control devices were employed by the Border Patrol.

Plaintiff's testimony alone is enough to create an issue of fact for a jury. While plaintiff's evidence that the Border Patrol failed to meet its obligation to supply a minimum number of traffic control devices is decidedly weak, the court's analysis is limited to the question of whether such evidence exists. As noted by the Second Circuit, "[t]he district court is charged upon a motion for summary judgment with determining whether there is sufficient evidence to sustain a verdict for the nonmoving party; it should not weigh the evidence and resolve factual issues raised." *Eye Assocs., P.C. v. IncomRx Systems, Inc.,* 912 F.2d 23, 26 (2d Cir.1990); *see Murphy v. Provident Mutual Life Ins. Co.,* 923 F.2d 923, 930 (2d Cir.1990) (Kearse, J., dissenting), *cert. denied,* —— U.S. ——, 112 S.Ct. 65, 116 L.Ed.2d 40 (1991) ("Any weighing of the evidence is the prerogative of the finder of fact, not an exercise of the court on summary judgment.") Because a jury conceivably could credit defendant's recollection as to the number and type of traffic control devices employed, the Border Patrol's motion for summary judgment is denied to the extent that it addresses the adequacy of the traffic control devices utilized in the checkpoint operation.

### D. *Proximate Cause*

The Border Patrol also seeks summary judgment on the ground that defendant can not show that any defect in the checkpoint was the proximate cause of the injury to Sanchez. The Border Patrol argues that Bellefeuille cannot show that the checkpoint

was a substantial cause of the events which produced the injury, and that assuming for the sake of argument that employees of the Border Patrol were negligent in establishing or maintaining the checkpoint, defendant's inability to stop his car was not a part of a natural sequence of events flowing from such negligence. Memorandum of Law in Support of Summary Judgment, attached to Notice of Motion, Doc. 29, at 23. Defendant responds that the faulty design of the checkpoint contributed to the accident by delaying him from taking timely corrective action. Memorandum of Law in Opposition to Summary Judgment, Doc. 35, at 24–25.

■■■■■■ Proximate cause is defined as a cause "which in a natural sequence, unbroken by any new cause, produces that event and without which that event would not have occurred." *Caraballo v. United States*, 830 F.2d 19, 22 (2d Cir.1987). The test for proximate cause is whether the allegedly negligent acts are a substantial factor in the sequence of causation, and whether the injury is reasonably foreseeable or anticipated as a natural consequence. *Standardbred Owners Ass'n v. Roosevelt Raceway*, 985 F.2d 102, 104 (2d Cir.1993). Because "questions concerning what is foreseeable and what is normal may be the subject of varying inferences," *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315–17, 414 N.E.2d 666, 670–71, 434 N.Y.S.2d 166, 170 (1980), "[p]roximate cause is almost invariably a factual issue" to be determined by a jury. *Monell v. City of New York*, 84 A.D.2d 717, 718, 444 N.Y.S.2d 70, 71 (1st Dep't 1981).

■■■■ This case is no exception to the general rule. Assuming for the sake of argument that the Border Patrol was negligent in its design or maintenance of the checkpoint, a jury must decide whether that negligence was a substantial cause of the resulting injury to plaintiff. Defendant presents evidence, consisting of his own testimony, that the faulty design of the traffic checkpoint limited the amount of time he had to react to the malfunction of his cruise control. Defendant's Affidavit, Exh. 1 attached to Doc. 35, at ¶ 39. Given this evidence, the court can not state as a matter of law that a negligently designed or maintained checkpoint was not

a substantial factor in the accident. Nor can the court state as a matter of law that the injury to plaintiff was not a reasonably foreseeable result of such negligence.

Because a genuine issue of material fact exists as to whether any negligence on the part of the Border Patrol was a proximate cause of plaintiff's injury, the Border Patrol's motion for summary judgment is denied to the extent that it is based upon proximate cause.

## III. CONCLUSION

In sum, third-party defendant Border Patrol's motion for summary judgment dismissing the third-party complaint is granted as to defendant and third-party plaintiff Bellefeuille's claim that the Border Patrol failed to provide a one-half mile unobstructed view of the checkpoint operation. In all other respects third-party defendant Border Patrol's motion for summary judgment is denied. All parties are directed to continue preparations for trial.

It is So Ordered.